JOSEPH B. JONES, and others, Executors of HENRY P. JONES, plaintiffs in errorr, vs. JOHN T. SHEWMAKE, and wife, de-defendants in error.

[1.] Until the adoption of the Code, lands acquired after the making of a will, did not pass by the will, which operated only upon such real estate as the Testator owned at the time of executing and publishing his will.

[2.] *Prima facie*, the execution of a codicil to a will of lands, so executed itself as to be capable within the statute of passing lands, is a republication of the original will, and the effect of such republication is, to make the will operate in the same manner as if executed at the time of such republication, unless a special intent is manifest in the codicil to restrain such operation, and give it a less extensive effect. In other words, it brings down the will to the date of the codicil, making the will speak as if of that date. That is, both will and codicil should be taken as one entire instrument.

In Equity. In Burke Superior Court. Bill, etc. Tried before Judge HOOK. May Term, 1866.

This cause involved, besides other things, certain lands in the county of Emanuel, of which Henry P. Jones died seized, and which were acquired by him between the time of executing his will and the time of executing the codicil thereto.

His will bore date March 28, 1850, and consisted of twenty-two items, the tenth of which was as follows :

" I further desire and direct that all the land which I may " own at my death in the county of Emanuel, in said State, " shall be divided into four parts, or shares, as nearly equal " in quantity as may be, and equalized in value in the man- " ner specified in item ninth for the shares in Burke county : " One of said shares in Emanuel county I give to each of my " sons William B. Jones, Henry W. Jones, and James V. " Jones, for and during the period of their respective natural " lives only, subject to the same limitations and remainders " as are mentioned in item fourth. The remaining fourth " share, I give to my son Joseph B. Jones, and his heirs for- " ever."

The codicil bore date September 27, 1853. It described the will, giving the time and place of making it, and the names of the attesting witnesses. It then went on, in three

items, to make changes in the eleventh, twelfth, thirteenth, fourteenth and fifteenth items of the will. A part of the fourth and last item of the codicil was as follows:

"It being my purpose, in the foregoing bequests to said "daughters and granddaughter, to equalize their real estate "herein given them, I direct that the land remaining after "making up the last share devised to my said granddaughter, "Josephine V. Brazeal, and not herein devised in that por- "tion of my said last will and testament preceding the four- "teenth and fifteenth items, shall be sold, and the proceeds "thereof, or so much as may be necessary, be divided "amongst my said daughters and granddaughter, to equal- "ize their real estate with the real estate given to my sons: "That is, if the shares of said daughters and granddaugh- "ter are not already respectively equal to the shares of my "sons; and if said proceeds shall be more than enough for "this purpose, the excess shall be equally divided amongst "my children and granddaughter; but if not sufficient, I "make no other distribution for that purpose."

The Court charged the jury as follows: "The other point made by the bill is, that there were lands purchased after the will of testator was executed, and do not pass under that will, but do pass under the codicil which was subsequently made. It is now the law of Georgia, under our Code, that all property acquired subsequent to the making of the will, shall pass under it, if its provisions be sufficiently broad to cover it. But this was not so at the time this will was made, as to real estate: and it is my opinion that it (the real estate in this issue) falls under the operation of, and is to be controlled by the codicil."

The jury decreed accordingly: and the charge of the Court is assigned as error.

STARNES, for plaintiffs in error.

SHEWMAKE, for defendants.

LUMPKIN, C. J.

We fully appreciate the reasoning of Judge STARNES against the rule in England, originating, no doubt, as he very properly contends, in Feudal policy, to-wit: That real estate passes by the will of the testator, which he owned at the time of its execution, upon the notion that a devise affecting lands is merely a species of conveyance.   Hence the distinction between devises and testaments of personal chattels.   The latter will operate upon whatever the testator dies possessed of; the former only upon such real estate as was his at the time of executing and publishing his will. Wherefore, the rule that no after-purchased lands will pass under such devise, unless subsequent to the purchase or contract, the devisor republishes his will.

The following note is appended by Mr. Justice Coleridge, in his edition of Blackstone: " It was long a prevailing opinion that, if a man devised particular lands by name, which he had not at the time, but afterwards purchased, or devised all lands which he should die seized of, that such devises would be valid.   And it is curious that Chief Justice Saunders, a consummate lawyer, under this impression, devised all lands which he had, or afterwards should have in Fullham.   His executors were Holt and Pollexfen, Chief Justices, and Sergeant Maynard, who differed as to the validity of the devise, the Sergeant holding the opinion which is now established, and the two Chief Justices that which has been determined not to be law. *Lawrence vs. Dodwell*, 1 *Lord Raym.* 438.   Holt, however, lived to change his opinion; and the law is now settled as laid down in the text."

The Statute, 1 *Vict. c.* 26, abolished this distinction between real and personal estate, and enacted that all property, of whatever kind, of which a man is posssessed or entitled *at the time of his death*, passes by his will; as the instrument now, with reference to the real and personal estate comprised in it, speaks and takes effect as if executed

immediately before the testator's death, unless a contrary intention appears by the document itself.

It seems, therefore, that the British Parliament, including the House of Lords, disregarding the rights of primogeniture, were in advance of our own State in changing the law upon this subject, other considerations prompting them to make this change.

It is needless to remark, that, until the adoption of the Code, this Court did not feel itself authorized to change so important a rule of the well-established law; and, therefore, uniformly held that after acquired lands would not pass by a will previously made by the testator. It is now the law of Georgia, under the Code, that all property acquired subsequent to the making of the will, shall pass under it, if its provisions be sufficiently broad to cover it. But this provision was not in operation at the time this will was made, and hence it does not fall under its operation.

Secondly, plaintiffs in error insist, however, that if they be wrong in the above position, they are right in holding that the execution of the codicil by Henry P. Jones was a republication of the will, and thereby all lands purchased by him in the county of Emanuel, after the execution of the will, and before the codicil, passed by the will. That such is the law, unless there is something in the codicil which expressly contravenes these provisions of the will; that when a man republishes his will, the effect is that the terms and words of the will should be construed to speak with regard to the property he is seized of at the date of the republication, just the same as if he had such additional property at the time of making his will.

To the contrary, the Court below held, that the lands bought by the testator after the making of the will, and before the execution of the codicil, passed under the codicil, and are to be controlled by it.

We extract from the case of *Haven vs. Foster* 14 *Mass. Rep.* 534, the rule now settled by the authorities upon this subject, namely: " That *prima facie* the execution of a cod-

icil to a will of lands, so executed itself as to be capable, within the statute, of passing lands, is a republication of such original will; and that this is more especially and unequivocally the case where the codicil contains words declaring and confirming the original will to be in force, either in whole, or so far as it is not altered or revoked by the codicil itself; that the effect of such republication is to make the will operate in the same manner as if executed " at the time of such republication, unless a special intent is manifest in the codicil to restrain such operation and give it a less extensive effect; and that where the will contains a residuary clause or words of general description sufficient to embrace all or any particular description of real estate, of which the devisor is seized, the effect of such republication is to make the will take effect and operate upon and pass any real estate falling within such description, which may have been purchased by the testator, after the date of the will and before the re-publication, unless there is a manifest intent, expressed in the codicil itself, to confine the operation of the will thus republished to the same estate which the testator held, and upon which the will operated at the period of its first execution."

It only remains to apply these rules to the case under consideration. This will bears date March 28th, 1850, and consists of twenty-two items, the tenth of which is as follows:

"I further desire and direct that all the lands which I may own at my death, in the county of Emanuel, in said State, shall be divided into four parts, or shares, as nearly equal in quantity as may be, and equalized in value in the same manner specified in item 9th for the shares in Burke county. One of said shares in Emanuel county I give to each of my sons, Wm. B. Jones, Henry W. Jones and James V. Jones, for and during the period of their respective natural lives only, subject to the same limitations and remainders as are mentioned in item 4th. The remaining four shares I give to my son Joseph B. Jones and his heirs forever."

The codicil bore date September 27th, 1853, giving the time and place of making it, and the names of the attesting witnesses. It then went on, in three items, to make changes in the 11th, 12th, 13th, 14th and 15th items of the will. A part of the 4th and last item of the codicil was as follows :

"It being my purpose, in the foregoing bequest to said daughters and granddaughter, to equalize their real estate herein given them, I direct that the land remaining after making up the last share devised to my said granddaughter, Josephine V. Brazeal, and not herein devised in that portion of my last will and testament preceding the 14th and 15th items, shall be sold, and the proceeds thereof, or so much as may be necessary, be divided amongst my said daughters and granddaughter, to equalize their real estate with the real estate given to my sons; and if said proceeds shall be more than enough for this purpose, the excess shall be equally divided amongst my children and granddaughter; but if not sufficient, I make no other distribution for that purpose."

Is there anything in this codicil which expressly contravenes the provisions of the will? We think not; and, such being the case, the effect of the re-publication of the codicil is to bring down the will to the date of the codicil, and to make both will and codicil speak as of the date of the latter. In other words, as though both were one entire instrument. Consequently, we reverse the judgment of the Court below.

Judgment reversed.