## SHARPTON *v.* JOHNSON.

1. General and vague objection to evidence, specifying no ground, presenting no point for adjudication, and not disclosing when it was taken, not considered.
2. The evidence authorized the charge on the subject of notice.
3. The verdict was authorized by the evidence.

December 23, 1890.

Evidence. Practice. Charge of court. Notice. Verdict. Before Judge HUTCHINS. Gwinnett superior court. March term, 1890.

This was a bill, filed on August 1, 1887, to require Richard Sharpton to account to Mrs. Johnson for the proceeds of land to which she claimed a half-interest. She alleged, in brief, that in 1864, her father, James A. Sharpton, was possessed of land worth $650; that his father, Dennis Sharpton, had bargained with one Robinson for other land at $500, but was unable to pay for it, and proposed for James A. to take it at $600, that is, pay Dennis $100 and pay off Dennis's note to Robinson, and Dennis was to transfer the bond for titles held by him to James A.; that in pursuance of this agreement James A. sold his land to one Wages for $650 for the purpose of buying the land from Robinson, and Dennis agreed to receive the money from Wages and apply it to the purchase from Robinson, taking the title in the name of James A., who was absent, but he took the title in his own name; that about this time James A. died, and Dennis set up that he had an interest in the land, moved on it, and made some contract with the widow of James A. (she being ignorant and relying on him to protect her interest and that of the complainant) recognizing her title to a half-interest, and holding the title to the remainder in trust for the complainant; that afterwards she surrendered the contract, and he took absolute control of the land, setting up title under the deed from Robinson; that his son, Richard, had notice of all these transactions, but conspired with Dennis to defraud the complainant out of her interest, and procured the widow to execute to them a release of her interest, pretending that she was conveying only a half-interest, whereas she attempted to convey the entire title; that on November 7, 1873, Dennis conveyed to Richard an absolute title to the whole land, worth $1,000, and he afterwards sold it; and that the facts were kept concealed by him and Dennis from the complainant until the past two years, and though she had

heard that she had some interest, she was unable to ascertain what her rights were.

By his answer the defendant set up that he paid full value for the land without any knowledge whatever of the equities claimed by the complainant, and denying all charges of fraud, combination, etc.

The evidence for the petitioner, as it appears in the record, tended to show the following: James A. Sharpton had two children, one of whom is dead and the other, Mrs. Johnson, is twenty-seven years old. She had no guardian. James A. died October 7, 1863. He owned about 100 acres of land which he sold to Wages for $625. Dennis Sharpton had purchased lands from Robinson and failed to pay for them, and James A. and Dennis agreed to use the money derived from the sale of the land of James A. to Wages, to pay for the Robinson land (otherwise known as the Fuller place), and that the deed should be made to James A., who died shortly thereafter, and the deed was not made. The widow and children of James A. went into possession of the land, though Dennis remained on it. The widow remained in possession of the place three years, and rented it the fourth year. Dennis handed her a paper, saying it was a deed to part of the land, and she handed it back to him and he gave her $150 for one half of the place, her interest. Dennis did not set up any claim or title to the place after she went into possession. There was no administration on the estate of James A. She could not say that she ever heard Richard Sharpton say anything about her husband's money purchasing the land, but she knew of the agreement between her husband and Dennis and heard Dennis say what that agreement was, and heard him say several times that when her daughter became of age she could sell the land and get her share. She did not live with Dennis, but lived on the same land in a different house. Den-

nis lived on the land before 1857 and before her husband sold to Wages, and he continued to live on it until he sold it to Richard in 1873. Her husband never loaned Dennis any money. She never gave in the land for taxes, but Dennis gave in for her. She did not remember when she first told her daughter that James A. furnished the money to Dennis to buy the place, but for a number of years she has told her about it. She never had any conversation with Richard about the land. James A. told his mother and father to live on the upper end of the land during their lifetime, and at their death the land to go to the wife and children of James A. James A. was at home when he told his father to go to Wages and get the money. Dennis told Mrs. Johnson that he owed her $50 that was not paid into the land, of the money he got from Wages. At the time the family of James A. occupied the land Richard was living in the neighborhood. Dennis told Wages that unless he could get the money from Wages above mentioned, and use it in paying for the place he had bargained for, he would lose it, as he had no money. James A. was buried on the place purchased from Robinson.

The defendant testified, in brief: During 1863 and 1864 he was away from home in the army, except for about thirty days in 1864; was not at home when James A. was killed; never heard that any portion of James A's money went into the purchase of the land in question, nor heard any such thing intimated until about the time this suit was commenced; bought the land from Dennis in 1873 for $850, without any notice or cause to suspect any defect in the title. Dennis lived on the place, using it as his own and exercising ordinary acts of ownership over it, from the time he first went there, about 1856, until defendant bought it in 1873, making crops on it from year to year. Defendant never told Coker that

his father's transactions were illegal in the sale of the land, nor anything of the kind; he did not remember that he had any conversation with Coker about the land; did not ascertain what had been done with James A's place, except to learn it had been sold; did not learn what had been done with the proceeds, and does not know that he inquired as to that; had about as much as he could do to look after himself and family; never had any cause to suspect that the proceeds of James A's place had been invested in the Fuller place, nor had any intimation of such thing; was friendly with his father, James A. and family, and they visited each other; never heard what had been done with the proceeds of James A's place. When he went to buy from his father, he saw he had the deed and knew he had been occupying and using the place for many years as his own; did not examine the title further; thought it was all right; sold the place for what it was worth; did not inquire, after James A. was killed, as to the condition of the widow and daughter; had other things. to do; knew when he went off to the army in 1862 that his brother owned the tract which was sold to Wages, and that his father had bargained for the land in question from Robinson and had a bond for title. When he was at home in 1864 he visited the family of James A., whom he knew had been buried on the land. No one had been buried there before. When defendant first came home in 1865, the family of James A. and Dennis and his family were living on the land, and defendant for two years lived within three miles and then moved to within one, visiting both families frequently.

In evidence appeared a warranty deed from Robinson to Dennis Sharpton, dated March 15, 1865, and reciting a consideration of $311; also the deed under which the defendant holds, dated November 7, 1873, reciting a consideration of $855, and that it was be-

tween Dennis Sharpton and Richard Sharpton, and signed by Dennis and Jane Sharpton. The name of the wife of James A. Sharpton is Clara.

The jury found for the complainant $427, with interest from November 7, 1873. The defendant moved for a new trial upon the following grounds:

(1) Error in admitting the following testimony of Coker, over the objection of the defendant, it not appearing that defendant had the knowledge or notice therein referred to, previous to or at the time of. his purchase: "I heard defendant, Richard Sharpton, say that his father's transaction in the sale of the land was illegal. His excuse was, that his brother, James A., did not have a deed for it; he did not see how they could collect it out of him; that if his father had left any property at his death, he, the complainant, could have collected it. He was neither guardian nor administrator."

(2) Error in charging: "In the absence of proof of actual notice, notice may be chargeable to a party in another way, when any fact comes to the party's knowledge which indicates that there is some trouble with the title he is about to buy, that some other person other than the holder of the deed claims title or an interest in it, and is such as would naturally put a man of ordinarily reasonable care and diligence on enquiry as to the true state of the title; it is his duty to investigate and to use ordinary care and prudence and diligence in it, and he is chargeable with notice of the facts that such enquiry discovers to him, or would reasonably have discovered." (To the charge here complained of the court added: "Whether or not there were facts or circumstances known to defendant at the time or before he purchased the property, requiring him to make enquiry under this rule, and if so, what such enquiry would have probably discovered, the jury must determine.")

(3) Verdict contrary to evidence, etc.

The motion was overruled, and defendant excepted.

W. E. SIMMONS and S. J. WINN, for plaintiff in error.
T. M. PEEPLES, *contra*.

SIMMONS, Justice.

The official report of this case discloses the facts and sets out the grounds of the motion for a new trial.

1. The first ground of the motion is that the court erred in admitting the evidence of Coker over the objection of the defendant. We cannot consider the first ground of the motion, because it is a mere general objection to the evidence without specifying any ground therefor ; it is too vague and does not present any point for adjudication. It does not say what the objection was or when it was made, whether made at the trial or put in afterwards in the motion for a new trial.

2. There was no error in the charge complained of in the second ground of the motion. It was insisted before us that there was no evidence to authorize it. After reading the evidence carefully, we think there is abundant evidence to authorize the judge to give this principle in charge to the jury, and the principle charged is in accordance with former rulings of this court. *Jordan* v. *Pollock*, 14 *Ga.* 145 ; *Urquhart* v. *Leverett*, 69 *Ga.* 98 ; *Johnson* v. *Dooly*, 72 *Ga.* 297.

3. The verdict of the jury was fully authorized by the evidence.                           *Judgment affirmed.*