## SUTTON *et al. v.* FORD *et al.*

1. By the Civil Code (1910), § 4094, it is declared that "No administrator or executor shall be authorized to sell the reversionary interest in the land set apart as dower during the lifetime of the widow, except it be necessary to pay debts."

(*a*) It was not a correct application of this rule to charge that "all other property, real and personal, belonging to his [the deceased husband's] estate, and which is subject to the payment of his debts, must first be fully exhausted before the administrator can lawfully obtain an order from the court of ordinary authorizing him to bring to sale the reversionary interest in dower lands for the purpose of paying off debts owing by the estate of the deceased husband."

(*b*) Whether the charge on this subject, when taken in connection with its context and the entire charge, would require a reversal, were there no other errors, need not be decided.

2. The evidence did not authorize the court to submit to the jury the question of whether there were no unpaid debts of the estate at all.

(*a*) The ground of the motion for a new trial on this subject did not include an entire sentence; and the same is true in regard to one or two other grounds of the motion for a new trial. If there were no other error, such exceptions would not be considered favorably as causes for reversal; especially in view of the general charge.

3. Where a widow had dower assigned to her in certain land of her deceased husband, if the person who was the administrator upon the estate was also the agent of the widow, and, while acting within the scope of his authority as such, he took advantage of his position as administrator to fraudulently obtain from the court of ordinary an order for the sale of land, including the land in which a dower had been granted and as to which there was a reversionary interest in the heirs, without any necessity so to do in order to pay debts, but for the purpose of getting rid of the interest of the other heirs and vesting the entire title in the dowress, and carried this purpose into effect, the fact that the same person who was the agent of the dowress was also the administrator of the estate would not prevent application of the ordinary rule that a principal is bound by the knowledge of his agent while acting within the scope of his authority; nor would the fact that as administrator he gave a bond for the proper performance of his official duties have that result.

(*a*) The charges complained of in the 18th, 19th, and 20th grounds of the motion for a new trial were not absolutely accurate in expression.

4. There was no error in the charge complained of in the 21st ground of the motion for a new trial.

5. The surrender and satisfaction of an existing debt, if done bona fide, operates as a present consideration; and if one who obtained a title by fraud conveys it to a third person in extinguishment and discharge of a pre-existing debt, the latter will stand as a purchaser for value. The questions of bona fides and notice are open to consideration as in other cases of purchase from one alleged to have procured title by fraud.

(*a*) This does not conflict with the previous rulings of this court, that, if the title to property has been procured from a person by fraud, the right of the seller to rescind the sale is superior to the right of a mortgagee who receives from the person committing the fraud a mortgage as security for an antecedent debt, without more.

6. None of the other grounds of the motion for a new trial, singly or together, show error authorizing the grant of a new trial. There was no error in the rulings in regard to evidence, which were complained of. If there were any slight verbal inaccuracies in expression in one or two of the charges, they were of minor importance, and would furnish no cause for reversal.

7. This court declines to review and overrule the decision in *McWhorter* v. *Ford*, 142 *Ga.* 554 (83 S. E. 134).

JANUARY 18, 1916.

Equitable petition. Before Judge Cox. Worth superior court. October 16, 1914.

P. Brooks Ford and others, alleging themselves to be heirs of W. J. Ford Sr., deceased, brought an equitable action against Rowena J. Ford, the widow of the decedent, and alleged to be his only other heir beside the plaintiffs, J. A. Hanes as administrator of the decedent, and R. L. Sutton. It was alleged, among other things, as follows: The widow took dower in the lands of the decedent, and also became the guardian of the plaintiffs. Hanes was the brother and agent of Mrs. Ford, and conducted her farming operations for her. She became indebted in such operations, and Hanes entered into a scheme with her creditors whereby the entire title to the dower land might be vested in her, so that she could place incumbrances thereon or make conveyances to them. Hanes, as administrator, accordingly made an application to the ordinary for leave to sell certain land, including the land in which dower had been assigned, alleging that this was necessary for the payment of debts and settlement with the heirs. No reference was made to the reversionary interest of the heirs, and this was fraudulently concealed from the ordinary. There was no necessity to sell the reversionary interest of the heirs in order to pay debts, they having been otherwise paid; and it could not be legally sold, during the existence of the dower estate, for settlement with the heirs. An order for the sale of the lands was fraudulently obtained. They were advertised for sale, the advertisement for the first time stating that they were sold subject to the dower. Hanes caused the land to be bid off for and in the name of Mrs. Ford for a grossly inadequate price, which was never paid or intended to be paid. He made her a deed to the land, and, in pursuance of his previous understanding, procured her to make a deed to Sutton for 75 acres of the land; and at his instance she made a mortgage on another part of the land to one Heinsohn to secure her individual debt incurred in farming. Later Heinsohn died, and she conveyed the land to his widow in payment of the debt. Fraud and collusion were charged as pervading the entire transaction. Sutton was charged with notice and knowledge of the facts, and with joining in the conspiracy. It was prayed, that the judgment of the ordinary authorizing the sale be decreed to be of no effect so far as it affects the land in controversy and these parties; that the sale by

the administrator be set aside, and his deed be canceled in so far as it purports to convey the reversionary interest; that, as against the plaintiffs, Sutton be decreed to have no greater interest in the land in controversy than the dower estate; and for general relief. By amendment it was alleged that certain other dower land had been conveyed to Sutton, who took with knowledge and had conveyed it to others. Judgment was prayed against him for damages for having conveyed certain land to innocent parties. It is unnecessary to set out the answer of Sutton further than to state that, among other things, he denied being a party to any fraud or collusion, or having notice thereof, and claimed to occupy the position of an innocent purchaser for value.

The jury found for the plaintiffs. The defendants moved for a new trial, which was denied, and they excepted.

*Pope & Bennet,* for plaintiffs in error.

*Clyde Forehand* and *Glessner & Park,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The court charged the jury as follows: "All other property real and personal, belonging to his [the deceased husband's] estate, and which is subject to the payment of his debts, must first be fully exhausted before the administrator can lawfully obtain an order from the court of ordinary authorizing him to bring to sale the reversionary interest in dower lands for the purpose of paying off debts owing by the estate of the deceased husband." By the Civil Code (1910), § 4094, it is declared: "No administrator or executor shall be authorized to sell the reversionary interest in the land set apart as dower during the lifetime of the widow, except it be necessary to pay debts." A comparison of the charge quoted above with the code section will show that there is a difference between them. There might be some small items of property belonging to the estate, which would be wholly insufficient to pay the indebtedness, and yet which would not have to be "fully exhausted" before an order could be lawfully obtained authorizing the administrator to bring to sale the reversionary interest in the dower land, if this should be necessary for the payment of debts.

It was contended by counsel for defendants in error, that, if this charge was not correct when taken alone, yet the court elsewhere in the charge instructed the jury in accordance with the contention of counsel for the plaintiffs in error, and that this should

not furnish ground for a new trial. There are two rules each of which has its legitimate field of operation. One of them declares, that, if an erroneous rule of law as to a material issue is charged, the error is not rendered harmless by a subsequent statement of the correct principle, unless the judge calls the attention of the jury to the incorrect statement, and retracts or modifies it, or, as has been elsewhere stated, unless the context shows that one charge was in fact a correction or modification of the other. *Brush Electric Light &c. Co.* v. *Wells,* 103 *Ga.* 512 (30 S. E. 533) ; *Rowe* v. *Spencer,* 132 *Ga.* 426 (5), 429 (64 S. E. 468) ; *Central Georgia Power Co.* v. *Cornwell,* 143 *Ga.* 9 (84 S. E. 67). The other rule declares that, though a charge may appear to be improper when abstracted from its context, yet, if when considered therewith it is legal and proper, it is not a ground for a new trial. *Stewart* v. *State,* 66 *Ga.* 90 (3) ; *Petersburg Savings & Insurance Co.* v. *Manhattan Fire Insurance Co.,* Id. 446 (9) ; *City of Atlanta* v. *Champe,* Id. 659 (2) ; *Belcher* v. *Craine,* 135 *Ga.* 73 (68 S. E. 839) ; and many other cases. In *Cox* v. *State,* 64 *Ga.* 375 (12), 377 (37 Am. R. 76), it was said: "The charge of the court, like all other deliverances in human language, is to be construed together as one whole, and when one part of it plainly tempers and modifies another, and the ultimate sense and impression are correct, the true standard of practical sufficiency is attained." To illustrate, if a case should involve the question whether the action was barred by the statute of limitations, and the judge should instruct the jury that it was barred if not brought within four years from the time when the right of action accrued, and later in the charge should instruct them that the action was barred if not brought within two years from the time when the right of action accrued, and there was nothing either in the express language or in the context to indicate that one charge was intended as a correction of the other, the jury might be left with no guide as to which of the conflicting rules was correct; and the party injured by such a charge might properly claim that a new trial should be granted. On the other hand, although an excerpt from a charge standing alone might seem to give an erroneous rule, yet if, taken with its context, it is clear that the correct rule was given, and that the jury were not likely to have been misled, no new trial should be granted. Material error will cause a new trial; but substantial

correctness, rather than mathematical accuracy, is required of the trial judge in instructing the jury.

We need not determine whether the charge above quoted would require the grant of a new trial, if there were no other error, a reversal being necessary for other reasons.

It was contended by counsel for the plaintiffs in error, that the statute intended to limit the ordinary in authorizing an administrator to sell a reversionary interest, and not to limit the power of an administrator in selling it; that it was for the ordinary to determine whether there were unpaid debts; and that his judgment could not be reviewed by a jury at a later date by merely proving that there were no debts. It will be observed in this case, however, that the application by the administrator for an order of sale stated that it was necessary for the payment of debts and settlement with heirs to sell certain lands, and apparently made no reference to the fact that a dower had been granted, or that it was sought to sell the reversionary interest of the heirs in such land for the reason that it was necessary to do so in order to pay debts. This was one of the grounds of attack upon the proceeding, because it was alleged that the administrator concealed from the ordinary the real facts. Whatever effect the judgment of the ordinary might have had, if the facts as to the dower and the reversionary interest had been stated in the application, and he had adjudicated, upon a full consideration, that there were debts and that they were such as to render a sale of the reversionary interest of the heirs necessary for their payment, there was no such distinct allegation in this application, and the entire transaction is attacked as fraudulent.

2. The court charged: "If there are no unpaid debts for which the estate of the deceased husband is legally liable, then there can be no lawful sale of the reversionary interest in dower lands." Under the evidence, we do not think that the judge was authorized to submit to the jury the question of whether there were no unpaid debts at all against the estate. The evidence on this subject in the present record is different from that in the record in *McWhorter* v. *Ford*, 142 *Ga.* 554 (83 S. E. 134). The excerpt from the charge which is quoted above, however, and which is complained of in the 16th ground of the motion for a new trial, includes only a part of a sentence; and the same is true of the charge complained of in the

17th ground of the motion for a new trial. Grounds of a motion which attack only a part or parts of a sentence in the charge often leave the meaning doubtful by omitting the immediate context; and these grounds, standing alone might not require a reversal. The part of the sentence omitted from the charge set out in the 16th ground of the motion for a new trial refers to the duty of the ordinary if made acquainted with the true state of affairs.

3. The doctrine is not controverted by counsel that a principal is bound by the acts and knowledge of his agent while acting within the scope of his authority; but it is contended that the doctrine is not applicable to the facts of this case. If Hanes was the agent of Mrs. Ford and also the administrator of the estate, and if, while acting within the scope of his authority as her agent, he took advantage of his position as administrator to perpetrate a fraud by obtaining from the ordinary an order for a sale of land including the reversionary interest in the dower land, without necessity to do so to pay debts, but for the purpose of divesting the interest of the other heirs and vesting the entire title in the dowress, freed from such reversionary interest, and if he carried such purpose into effect, the fact that he was also the administrator of the estate would not prevent the ordinary rule of principal and agent above mentioned from applying; nor would the fact that as administrator he gave a bond for the proper performance of his official duties have that result.

The charge complained of in the 18th ground of the motion was not erroneous on the ground that there was not sufficient evidence as to fraud and agency on which to base it. If there was any inexactness in not mentioning the scope of the authority in this immediate place, we think it could hardly have been misunderstood in the light of the context and general charge. But as the case is to be retried, this particular criticism will not likely be necessary again.

What is said above may also be considered in connection with grounds 19 and 20 of the motion for a new trial. The question of whether the alleged agent was acting as such in the scope of his agency might have been somewhat more clearly brought out in connection with the charges complained of in the 19th and 20th grounds of the motion, and in the latter whether Mrs. Ford re-

ceived or retained the benefits or advantages with or after knowledge of his act.

4. There was no error in the charge set out in the 21st ground of the motion for a new trial; and the evidence authorized it. *Sharpton* v. *Johnson,* 86 *Ga.* 443 (12 S. E. 646).

5. The court charged as follows: "Where persons who have been defrauded have an equitable right to have a sale of their property set aside for fraud, as against the purchaser at the sale, their right to thus reclaim their property is superior to the claim of title of another person who has acquired the property from the purchaser at the sale in consideration of an antecedent debt which the purchaser owed to him before the sale." The court further charged: "Should you believe from the evidence in this case that the true and only consideration of the deed made to Sutton by Mrs. Ford on March 4, 1904, conveying to him part of lot 403, was the settlement or discharge of an indebtedness which he claimed against her for mules furnished to her on credit prior to the administrator's sale, as contended by plaintiffs, then your finding upon this branch of the case should be that Sutton is not a bona fide purchaser for value of the lands described in that deed." This was error.

It is very generally held that one who takes a transfer of negotiable instruments, in payment of or to secure an antecedent debt, ranks as a purchaser for value. This rule, however, has been said to rest largely on commercial necessity. Our Civil Code, § 4289, declares that the holder of a note as collateral security for a debt stands on the same footing as a purchaser of it. In other jurisdictions there are numerous decisions which hold that one who takes a transfer or conveyance of property, other than negotiable instruments, to secure payment of a pre-existing debt does not rank as a purchaser for value. The ground on which these decisions usually rest is the assertion that the creditor does not pay anything, or actually or irrevocably lose anything except his bargain; and that, if he is compelled to surrender the property, the debt will revive, and he will still have his claim, and will be in no worse condition than he was before. Sometimes it has been sought to liken the position of a person taking a conveyance in payment of a debt to an attaching creditor. It has been said that if the creditor holds some other valid security for the debt and surrenders it, as well as cancels the debt, the result might be different. In a number of these decisions

no distinction is made between retaining the debt and adding a security to it, and surrendering or discharging the debt. Many of them are in regard to goods or other personal property. But there is some conflict on the subject. In some cases it has been held that one who receives property either as security or in payment of a pre-existing debt takes as a purchaser for value. Other decisions have drawn a distinction between one who holds his claim and superadds to it a security, thus parting with nothing of value at that time, and one who takes an absolute conveyance in payment of the indebtedness due to him, and cancels and discharges such debt. Courts which take this view declare that to cancel and surrender a debt in payment for a conveyance does change the position of the purchaser, so that he will be injured if he should lose the property. This position is thus stated in State Bank v. Frame, 112 Mo. 502 (20 S. W. 620, 623) : "We think the rule deducible from these authorities is that a deed made in consideration of the absolute discharge of a pre-existing debt of the grantor, or an adequate portion of it, will constitute the grantee a purchaser for value, so as to protect him against a previous unrecorded deed of the same grantor. By the satisfaction of the debt the creditor divests himself of the right of an action, or of securing the original liability, and places himself in a worse condition than he would have done by a definite forbearance of the debt." To this it might be added that the effort to set aside a deed for fraud might be delayed for years, during which time the debtor might become insolvent, or the bar of the statute of limitations might attach, unless it should be held to be suspended. Moreover, if an agreement to extend the time of payment of a debt will constitute a valuable consideration, as has been held (Sweeney v. Bixler, 69 Ala. 539), it is not easy to see why a cancellation and extinguishment of the debt, which renounces any right to enforce it at all, is less so. See also, Adams v. Vanderbeck, 148 Ind. 92 (45 N. E. 645, 47 N. E. 24, 62 Am. St. R. 497) ; Sipley v. Wass, 49 N. J. Eq. 463 (24 Atl. 233 (5), 236-237) ; Clements v. Doerner, 40 Ohio St. 632; Butters v. Haughwout, 42 Ill. 18 (89 Am. D. 401) ; Bunn v. Schnellbacker, 163 Ill. 328 (45 N. E. 227) ; Shufeldt v. Pease, 16 Wis. 659; Schluter v. Harvey, 65 Cal. 158 (3 Pac. 659).

Many citations on the various subjects, showing the conflicts in different jurisdictions, and sometimes in the decisions of the same

court, will be found in notes to 2 Devlin on Real Estate (3d ed.), § 815, and 2 Pom. Eq. Jur. (3d ed.) § 749. The latter author expresses the opinion that to hold that a conveyance given as a security for an antecedent debt is made without, but one in satisfaction of such a debt is made with, a valuable consideration, when the fact of satisfaction is not evidenced by any act of the creditor, but depends upon mere parol evidence, is opening the door wide for the easy admission of fraud; though he seems to think that the ruling is logical, but impolitic. We shall not undertake to cite decisions on each side of the question, or discuss where the greater number ·may be. The citations above will show that the decision of this court in *Harris* v. *Evans,* cited below, is not without support.

In *Dinkler* v. *Potts,* 90 *Ga.* 103 (15 S. E. 690), it was held that where goods were fraudulently purchased under circumstances which entitled the vendor to a rescission, a mortgage given by the purchaser to a creditor to secure an antecedent debt, the creditor paying nothing and parting with nothing, was inferior to the vendor's right to rescind. Section 3713 of the Code of 1895 (Code of 1910, § 4307) was apparently codified from that decision, though it uses the words, "When a contract of sale is rescinded for fraud, the rights of the vendor reclaiming the goods are superior to those of one who has acquired the goods, or a lien thereon, in consideration of an antecedent debt." We need only say that where this section applies, it of course controls, but its terms refer to a rescission by a vendor of goods procured from him by fraud, and do not conclude the case before us. In *Mashburn* v. *Dannenberg,* 117 *Ga.* 567 (44 S. E. 97), the question involved and decided was as to a mortgage given to secure an antecedent debt, by a vendee of goods who induced the sale by fraud, where the seller elected to rescind. The meaning of antecedent debt was also discussed. What was said in denying the motion for a rehearing, in regard to a sale to pay an antecedent debt, was not a direct decision.

In *Harris* v. *Evans,* 134 *Ga.* 161 (67 S. E. 880), it was held, that "The surrender and satisfaction of an existing debt, if done bona fide, operates as a present consideration," and that it was error to charge that one who purchased land in settlement of a pre-existing debt could not claim protection as a bona fide purchaser for value and without notice. The matter there involved was an alleged easement, but the point as to valuable consideration is not

different. Some of the cases mentioned above were there cited. That was a decision by the entire bench of six Justices, and is binding unless reversed. Civil Code (1910), § 6207. See, in this connection, *Forbes* v. *Chisholm*, 84 *Ga.* 641 (11 S. E. 554), decided in 1890, before the section just cited was codified. As to a mortgage on land to secure an antecedent debt, see *Mize* v. *Bank of Whigham*, 138 *Ga.* 499 (75 S. E. 629).

Of course, if Sutton occupied the position of a purchaser for value, still this would not conclude the questions of fraud and notice. If one purchases for value property obtained by fraud, either participating in the fraud or with notice of it, paying a consideration alone would not protect the purchaser.

We do not think that the latter portion of the charge cured the error dealt with.

6. Under the issues and in connection with other evidence introduced, there was no error in admitting in evidence a certified copy of the inventory and appraisement of the estate of the deceased father of the plaintiffs; nor in allowing the mother of the plaintiffs, who was the dowress and was also their guardian and a defendant in the case, to testify that she never had any settlement with the administrator of her deceased husband as guardian for her children, and that he never paid to her as guardian for them anything; nor in permitting her to testify that she did nothing to encourage the suit, but discouraged the plaintiffs as much as she could from bringing it. Nor was there error in admitting the evidence of the witness Grubbs, as to the efforts to get the absolute title of the dower lands in the widow to secure an indebtedness by her. There was evidence tending to show that the defendant, Sutton, to whom some of such land was conveyed after the administrator's sale, if not an actual participant in the alleged fraudulent scheme, at least was affected with notice. The witness Forehand was not disqualified to testify to the amount of the debts of the estate; nor was there error in admitting his statements to Heinsohn, to the effect that the latter could not get good title to the dower land.

The other grounds of the motion for a new trial not herein discussed in detail are without merit, and neither singly nor collectively furnish cause for a new trial. There may be one or two slight verbal inaccuracies. Thus, in the 13th ground of the motion

for a new trial, if there was a slight inaccuracy in stating a contention of the plaintiffs, in the light of the general charge it furnished no ground for a reversal.

We have discussed such of the grounds as we deemed to require discussion.   A reviewing court must have the right to exercise some discretion in determining what points require elaboration and what do not, what shall be discussed singly, and what may be grouped together.   Not infrequently records come to this court containing hundreds of pages, and sometimes more than a hundred points, some of them palpably lacking in merit.   To discuss at length each of these points would serve no good purpose, but the books and records would be in danger (in the quaint language of Lord Coke, in speaking of those in the King's courts) of growing to be "like Elephanti libri, of infinite length."

7.   As some of the grounds of the motion for a new trial in this case are similar to some involved in *McWhorter* v. *Ford,* supra, it was said that the decision in that case should be reviewed and overruled.   We decline to do this.

*Judgment reversed.   All the Justices concur, except Fish, C. J., absent.*