16126.    POLAND *et al.* v. OSBORNE LUMBER CO. *et al.*

1. In this processioning case, the evidence did not demand, but would have authorized, a verdict for either side.

2. The court erred in giving a charge not warranted by the evidence, and the losing party was probably prejudiced thereby.

3. The court erred in charging the jury in effect that they would be bound to find against the line as returned by the processioners if they found that there were existing ancient landmarks on trees on the line claimed by the protestants, but none on the line as run by the processioners, there being some evidence of the previous existence

of such marks on the latter line, and the evidence as a whole being such that a finding that this was the true line would have been authorized.

4. Numerous grounds of the motion for a new trial are but amplifications of the general grounds and are disposed of in the ruling first announced above. Since a new trial is ordered for other reasons, no ruling is necessary upon the ground of the motion based upon the alleged disqualification of a juror. Other grounds present no question for decision. Under the rulings stated in headnotes 2 and 3 and the corresponding divisions of the opinion, the court erred in overruling the motion for a new trial.

DECIDED MAY 19, 1925.

Processioning; from Lincoln superior court—Judge Shurley. November 21, 1924.

*William H. Fleming,* for plaintiffs in error.

*Callaway & Howard,* contra.

BELL, J. This was a processioning case. The adjacent tracts of land between which the line was in dispute may be referred to as "the Searles tract," lying west of the line, and "the Bussey-Burch tract," lying east of the line. The owners of the Searles tract were the heirs of John Searles, deceased. The owner of the Bussey-Burch tract was the Twin City Power Company. M. G. and J. J. Dorn had purchased the timber upon the Searles tract, and the Osborne Lumber Company had purchased the timber upon the Bussey-Burch tract. The Osborne Lumber Company claimed that the Dorns were trespassing across the dividing line, and instituted proceedings to have the line established by processioners. We thus have the Searles heirs and the Dorns on one side of the controversy and the Twin City Power Company and the Osborne Lumber Company on the other side.

All parties were agreed that the southern end of the dividing line was at a point known as the Tutt corner, evidenced by a rock, and that from this point the true line ran in a northerly direction along a well-defined hedgerow for a distance of several hundred yards to an old road. The dispute is as to the direction which the line should take from the old road to the northern boundary of the two tracts. The owners of the Searles tract claimed that the dividing line continued from the old road in the same course, without variation, which it had taken from the point of beginning; that is, that the dividing line was a straight line from one end to the other. The owners of the Bussey-Burch tract contended

that the line varied or deflected westward at the old road at an angle of sixteen and one half degrees, and that it was evidenced by an old fencerow or hedgerow extending from the old road to the northern boundary. The area between the disputed lines was, therefore, in the shape of a V or triangle. The processioners found that the line was a straight line as claimed by the owners of the Searles tract. The owners of the Bussey-Burch tract filed a protest, on the trial of which the jury sustained the return of the processioners. The protestants filed a motion for a new trial, which was granted, and upon the second trial the jury found against the return of the processioners. The Searles heirs moved for a new trial, which the court overruled, and they excepted.

1. Each side claims to have been entitled to a verdict as a matter of law. By going through the record and selecting certain parts of the testimony of the several witnesses and ignoring the other evidence, it is possible to demonstrate that the evidence demanded a verdict in favor of the plaintiffs in error. By a like process, it may be shown that the verdict should have been for the defendants in error. But, without undertaking to summarize or outline it, we are satisfied that, upon a consideration of all of the evidence, a verdict was not demanded for either party, and that the question of whether the verdict shall be allowed to stand will turn upon the assignments of error in the special grounds of the motion for a new trial.

2. In ground 9 of the motion for a new trial error is assigned upon the following charge of the court: "And if you find that the owners of the Bussey-Burch tract and those occupying said tract under said owner either cultivated said land on the east side of said hedgerow up to the hedgerow or fence row, or cut cedar posts or other timber up to the fencerow or hedgerow, then such acts would have been possession of the owners of the Bussey tract up to the old hedgerow." The exception is that this charge was unwarranted by the evidence.

A diligent search of the record fails to disclose any evidence to the effect that the owners of the Bussey-Burch tract ever cut any timber or cultivated any land on the disputed area,—that is, west of the line claimed as the true line by the owners of the Searles tract. The court, therefore, committed error in giving this charge. Were the losing parties prejudiced thereby? The court had just

instructed the jury that a claim of right accompanied by actual possession for more than seven years should be respected and that the lines should be so marked as not to interfere with such possession. It is not improbable that some such occurrence as the following took place in the jury-room when the jurors came to their deliberations: One juror takes the position that the protestants, or owners of the Bussey-Burch tract, are entitled to prevail because of actual possession under a claim of right for more than seven years. To another juror, who inquires as to the character of possession meant, he explains that he refers to the cutting of timber and the cultivation of the land. Challenged as to the evidence of such acts, he replies, more or less convincingly, that if there had been no evidence thereof the trial judge would not have instructed them that such acts on the part of the protestants or their predecessors in title would have constituted possession within the meaning of the law, or, in other words, that the judge would not have submitted the issue. The jurors might thus have been led into giving the protestants an advantage on a material matter, without evidence on which to do so.

In *Culberson* v. *Alabama Construction Co.,* 127 *Ga.* 599 (1) (56 S. E. 765, 9 L. R. A. (N. S.) 411, 9 Ann. Cas. 507), the Supreme Court held that instructions not warranted by the evidence are cause for a new trial *if it is not apparent* that the jury could not have been misled by them. See also *Central Georgia Power Co.* v. *Cornwell,* 139 *Ga.* 1 (2) (76 S. E. 387, Ann. Cas. 1914A, 880); *Gaskins* v. *Gaskins,* 145 *Ga.* 806 (1) (89 S. E. 1080); *Southern Marble Co.* v. *Pinyon,* 144 *Ga.* 259 (2) (86 S. E. 1086); *Barrett* v. *Bryant,* 156 *Ga.* 614 (1) (119 S. E. 599); *Kirkland* v. *Brewton,* 32 *Ga. App.* 128 (2) (122 S. E. 814), and citations.

We can not say that the charge complained of was not prejudicial.

3. Complaint is made of the following charge of the court: "If you find the line as claimed by Mr. Osborne is indicated by old landmarks on the trees, and that these were ancient landmarks; and you further find that there were no landmarks of any character on the line run by the processioners, then it would be your duty, under the law, to find in favor of the line claimed by Mr. Osborne." It is contended that this charge improperly confined the jury to

landmarks now existing, to the exclusion of evidence of genuine landmarks that formerly existed.

One. of the witnesses testified that at one time there was a pine tree standing directly on the line run by the processioners, on which tree there were landmarks; and that while this tree had been cut down the stump was still there. This witness claimed to have been well acquainted with the lands for about fifty years. He further testified that at one time, evidently thirty-five or more years ago, there was situated along the line as returned by the processioners an old rail fence, which was "on the line. As to whether that fence was right on the line they said it was on the line, . . .and everybody recognized that fence was the line." His evidence in regard to the line contended for by the owners of the Bussey-Burch tract was in part as follows: "There never was any fence over there. I went there in 1873, and there wasn't nary one there then and there ain't been none there since that I know of. . . There was never a fence row there, there was never a hedgerow there, there was nothing but a turn row, where I would turn around at in plowing."

Even assuming with the defendants in error that the testimony of this witness was not of an exceedingly impressive character, the jury in their exclusive province could have believed it. There was still other evidence, not referring to landmarks, which tended to show that the line as run by the processioners was the true existing line. It is our opinion that the processioners, in seeking to locate and mark a line previously established and existing, would not be bound to follow the course of existing landmarks upon trees, in preference to some other course claimed to be the location of the true line, and which the processioners might believe from evidence of previous landmarks thereon to be the true line, even though such landmarks have disappeared and are not to be found at the time of the survey.

In *Roberts* v. *Ivey*, 63 *Ga.* 622, the Supreme Court, by Mr. Justice Bleckley, said: "The marked trees are strong for the Shockley, but the concurrent acts and declarations of former owners of the respective tracts are overwhelming for the Brittain. It is plain that the jury had ample evidence before them to justify a finding either way. Tradition was for one party, and trees for the other. The jury recognized the line which the early pro-

prietors recognized and endeavored to establish.  On such a controversy the rule in this court is to go with the jury where we are not certain of a better line, and the application of that rule forces us to declare for the Brittain."  See also *Brantley* v. *Davis,* 143 *Ga.* 73 (1) (84 S. E. 434); *Cosby* v. *Reid,* 21 *Ga. App.* 604 (1) (94 S. E. 824).  We think the court erred in giving the instruction complained of.

4.  In one ground of the motion complaint is made that the court erred in its charge in constantly using the word "hedgerow" as necessarily meaning a dividing line.  This exception "did not include an entire sentence."  If there were no other errors, such exception would not be considered favorably as cause for reversal (*Sutton* v. *Ford,* 144 *Ga.* 587 (2 *a*), 87 S. E. 799); and in the instant case we make no ruling thereon.  But since the judgment refusing the motion for a new trial must be reversed on other grounds, we take occasion to observe that the evidence did not indisputably show the existence of a hedgerow at either of the disputed lines; and even if the jury found that there was a hedgerow along one of these lines, it did not follow as a necessary conclusion, under the evidence, that this hedgerow marked the location of the true line.

A further ground of the motion assigns error upon the following excerpt from the charge of the court:  "If you should find that there was no acquiescence, and that there was no line established later, then the original line as contended for by the protestant."  It is impossible to determine from this ground whether the charge was error or not.  The extract complained of does not seem to be a complete sentence, and an exception to "an extract from the charge, the extract consisting of an uncompleted sentence which is without meaning as it stands and announces no proposition of law, is without merit."  *Parks* v. *Hailey,* 142 *Ga.* 391 (9) (83 S. E. 100).

In another ground of the motion the verdict is attacked because of the disqualification of one of the jurors, but the question raised by this assignment need not be decided.  All other grounds of the amendment to the motion for a new trial are but amplifications, in one form or another, of the general grounds, and are covered by our ruling in the first division.

For the reasons stated in headnotes 2 and 3 and the correspond-

ing divisions of this opinion, the court erred in overruling the motion for a new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*