## BENTON et al. v. BENTON.

1. Where in aid of a claim the claimant amends and seeks affirmative equitable relief to have reformed the deed under which he asserts title to the property levied upon, and upon the trial obtains that relief, the proceeding becomes an equitable one; and this court, and not the Court of Appeals, has jurisdiction to review a judgment overruling a motion by the plaintiffs for a new trial.

Attachment, 6 C. J. p. 377, n. 51 New; p. 387, n. 90 New; p. 401, n. 96; p. 402, n. 7.
Courts, 15 C. J. p. 1038, n. 43.
Trial, 38 Cyc. p. 1785, n. 90.

2. An innocent vendee in a security deed does not become affected by the fraud of the seller, though the property embraced therein be attached in the vendee's hands before checks given by him to the vendor for the loan secured by such deed have been paid, and before they have passed into the hands of innocent holders; it not appearing that the vendee could control these checks without the co-operation of the vendor, or that the latter could have been induced by him to cancel or surrender them. The case is stronger where one of such checks had been delivered to a creditor of the vendor in payment of his debt to such creditor, who in turn had surrendered his note for such indebtedness, before the property had been attached, and where the other check given by the vendee to the vendor for the remainder of the loan secured by such deed had passed into the hands of an innocent purchaser, although such check was not paid until after the maker had notice of the issuance of the attachment under which the property claimed had been levied upon.

3. An instruction by the court, that the claimant contends that he took his security deed in good faith, that it was a bona fide transaction, and that there was no intention on his part to delay, hinder, or defraud the creditors of the maker of said deed, was not subject to the exception that it imposed upon the plaintiffs the burden of proving that the claimant had the intention of hindering, delaying, or defrauding the creditors of the defendant in attachment, when as a matter of law no such intention on his part was necessary in order to set aside the deed as fraudulent, and it was only necessary for the plaintiffs to show that the grantor entertained such intention, and that such intention was known to the grantee, or that he had reasonable grounds to suspect such intention. Such instruction did not lay down any rule of law for the guidance of the jury in reaching their verdict, and the conclusion can not be logically drawn therefrom that it placed upon the plaintiffs the above burden.

4. The instruction "that although you might believe . . it was the intention of Mr. Doyle Campbell, at the time this paper was executed, to delay, or defraud, or hinder his creditors, unless that intention was known to Mr. Eugene Benton, and if he advanced money on it and it was a bona fide transaction, why then in law it would be valid, and you would not be authorized to set aside this conveyance by your verdict," was not erroneous, in view of the repeated instructions of the court that if the vendor in the security deed made the same to delay, hinder, or defraud his creditors, and such intention was known to the vendee, or if he had reasonable grounds to suspect such intention, the conveyance would be void as against the plaintiffs. At most such instruction was incomplete, and would have been erroneous if not completed; but where it was completed in the other instructions of the court to the jury, it was not erroneous. It did not leave the jury with two inconsistent and contradictory instructions for their guidance.

5. There was evidence to support the verdict.

No. 5827.   July 15, 1927.

Claim, etc.   Before Judge Park.   Jasper superior court.   December 20, 1926.

*A. S. Thurman* and *W. H. Key,* for plaintiffs.

*John R. L. Smith* and *Joseph LeConte Smith,* for defendant.

HINES, J.  Two attachments against Doyle Campbell, in favor of M. Benton and the Jasper County Bank, were levied upon various articles of personalty as the property of Campbell.  Eugene Benton filed claims to the property, setting up title under a deed from Campbell to him to secure debt.  The plaintiffs attacked this deed, upon the ground that it was made to delay, hinder, and defraud them in the collection of their debts against Campbell.  The claims were consolidated and tried together.  The jury returned a verdict in favor of the claimant.  The plaintiffs made a motion for new trial upon the general grounds, and by amendment added two special grounds.  The motion was overruled, and the plaintiffs excepted.  They filed in this court a motion to transfer this case from this court to the Court of Appeals, upon the ground that this court is without jurisdiction to determine the assignments of error set out in the bill of exceptions, and that jurisdiction of the case is vested in the Court of Appeals.

1.  Has this court jurisdiction of this writ of error?  In aid of his claim the claimant filed an amendment in which he sought to reform the security deed under which he claimed title to the property levied upon.  This amendment was allowed, and on the trial of his claim as thus amended he was granted the affirmative equitable relief for which he prayed.  By the amendment to the constitution of this State, which was ratified on November 7, 1916, this court has jurisdiction "in all cases in equity."  Acts 1916, p. 19; 10 Park's Code Supp. 1922, § 6502.  Where an attachment is levied on personal property and a claim is filed, the proceeding is one at law.  A case commenced as one at law may be changed into one in equity, or to one both at law and in equity.  So where one files a claim to personalty levied upon under an attachment or other process, and in aid of his claim files an amendment in which he seeks affirmative equitable relief, the original proceeding at law is converted into a proceeding both at law and in equity.  In such a case, when a writ of error is sued out to review the final judgment, this court has jurisdiction to determine the assignments of error set out in the bill of exceptions.  So in a case in equity, or one in which there is a union of causes of action at law and in equity, where the issues are so modified as to eliminate all claims for

equitable relief and the case proceeds only for common-law relief, and a final judgment is rendered on such issues as remain · for decision, the Court of Appeals has jurisdiction, and this court is without jurisdiction to review a writ of error brought to review such final judgment. *Coats* v. *Casey,* 162 *Ga.* 236 (133 S. E. 237). The original proceeding in this case was one at law, but by the amendment it became one at law and in equity, in which both legal and affirmative equitable relief was granted. For purposes of jurisdiction the case thus became one in equity, and this court has jurisdiction to review the writ of error brought to review the final judgment. Therefore the motion to transfer the case from this court to the Court of Appeals is denied.

2. It is insisted by counsel for the plaintiffs that the verdict in favor of the claimant is contrary to law, for the reason that will now be stated. On December 31, 1925, Campbell executed the security deed under which the claimant asserts title to the property in dispute. He left this deed with another person to be delivered to the claimant the next day, and went to the State of Florida. This deed was delivered to the claimant on January 1, 1926. The claimant advanced thereon to Campbell $10,000. Of this sum, by the direction of Campbell, $2,160.88 was paid to the Georgia Bond & Investment Company. This payment was made by check given by the claimant, purporting to be dated January 1, 1926, but actually executed on January 4, 1926. The claimant in his testimony explained this discrepancy of date by the statement that he wished the date of the check to correspond with the date of his deed. The check was marked paid by the bank on which it was drawn, on January 5, 1926. The claimant testified that this check was actually turned over to the Georgia Bond & Investment Company, in payment of Campbell's indebtedness to that company, on January 4, 1926, and that the note evidencing this debt was turned over to him on that date. The fraudulent-debtor attachment against Campbell was issued by the judge of the superior court on January 4, 1926, upon a petition brought by the plaintiffs against Campbell and the claimant. The claimant was not served with this petition until January 6, 1926. On January 2, 1926, the claimant transmitted to Campbell, through the mail to Tampa, Fla., his check for $7,833.12. Upon getting this check Campbell, between January 4 and 7, 1926, procured from a bank at St. Petersburg,

Florida, a cashier's check in his favor, in lieu of said check of the claimant. The cashier's check was made payable to Campbell's brother, to whom it was forwarded in payment of a debt due by Campbell to his mother. The check drawn by the claimant in favor of Campbell was marked paid by the bank in Monticello, on which it was drawn, on January 12, 1926. Under these circumstances the plaintiffs insist that the claimant, as a matter of law, does not stand upon the footing of a bona fide purchaser, for the reason that he did not part with the money represented by this check until he had notice of the issuing of these attachments against Campbell.

In *Nicol* v. *Crittenden,* 55 *Ga.* 497, this court held that "An innocent purchaser does not become affected by the fraud of the seller, though the property be attached in the purchaser's hands before it is paid for, and before negotiable notes given for the price have passed to innocent holders." By parity of reasoning, an innocent vendee in a security deed is not affected by the fraud of the vendor, although the property be attached in the vendee's hands before checks given by the vendee to the vendor for the loan secured by such deed have been paid, it not appearing that the claimant could control these checks without the co-operation of the vendor, or that the latter could have been induced by him to cancel or surrender the checks, which were negotiable paper. This is especially true where it appears that the check of the claimant in payment of the debt of the vendor to the Georgia Bond & Investment Company had been delivered to that company, which in turn had surrendered the note given by the vendor for such indebtedness, before the attachment had issued, and where it appears that the check given by the claimant to the vendor for the remainder of the loan had passed into the hands of an innocent purchaser. So we can not say, as a matter of law, in these circumstances, that the claimant is not a bona fide vendee of this property under this security deed.

3. The court charged the jury as follows: "The claimant in this case contends that at the time he took these papers he took them in good faith, that it was a bona fide transaction, and that there was no intention on his part to delay or defraud the creditors of Mr. Doyle Campbell; and he contends that at the time these papers were delivered to him they were delivered to him for the

35

purpose of securing the debt in the sum of $10,000 that he had advanced to Mr. Campbell at his request; and he contends, as I stated to you just now, that the papers were executed and delivered to him and that he accepted them in the utmost good faith; and he contends that under the law and facts of this case that the property levied upon would not be subject to this attachment, for the reason that the title to all this property is in him by virtue of the deed which will be out before you." Movants excepted to this charge, upon the ground that it placed upon the plaintiffs the burden of proving that the claimant had the intention of hindering, delaying, or defrauding the creditors of the defendant in attachment, when as a matter of law no such intention on his part was necessary in order to set aside the deed as fraudulent, and it was only necessary for plaintiffs to show that the grantor intended to hinder, delay, or defraud his creditors, and that such intention was known to the grantee, or that the facts and circumstances were such as to cause him to suspect such intention on the part of the grantor. It is not claimed that this statement of the contentions of the claimant was incorrect. It will be presumed that it was correct. *Robinson* v. *State,* 109 *Ga.* 506 (5) (34 S. E. 1017). This statement of the contentions of the claimant did not lay down any rule of law for the guidance of the jury in reaching their verdict. The assertion that this statement placed upon the plaintiffs the burden of showing that the claimant intended to hinder, delay, or defraud the creditors of the grantor in the security deed is not well taken. This conclusion can not be logically drawn from this statement of the claimant's contentions. The court did not tell the jury that the plaintiffs would have to overcome by proof this contention of the claimant. So we do not think that this exception to this excerpt from the charge of the court is well taken.

4.  The court charged the jury as follows: "On the other hand, the court charges you that although you might believe—and I do not intend to intimate to you what you should or should not believe—that although you might believe that it was the intention of Mr. Doyle Campbell, at the time that this paper was executed, to delay or defraud or hinder his creditors, unless that intention was known to Mr. Eugene Benton, and if he advanced money on it and it was a bona fide transaction, why then in law it would be valid, and you would not be authorized to set aside this con-

veyance by your verdict." The exception to this charge is that the court did not instruct the jury that if the claimant had reasonable ground to suspect the fraudulent intention of the grantor, then they would be authorized to set the deed aside and find the property subject to the attachment. Standing alone, and not considered with the other instructions given by the court to the jury, this excerpt would be erroneous. *Nicol* v. *Crittenden,* supra. But when taken in connection with the entire charge upon this subject, we do not think that it requires the grant of a new trial. The court charged the jury paragraph 2 of section 3224 of the Civil Code. The court then gave this instruction: "'A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid.' Now when you go to your jury-room ask yourselves the question, and in answering that question you take into consideration every fact and every circumstance developed in the trial of this case, both by oral and by written testimony, but ask yourselves the question: Are we satisfied by the greater weight of evidence that at the time this deed was executed by Mr. Doyle Campbell, was it his intention at the time he executed it to delay or to hinder or to defraud his creditors? . . If you answer that question in the affirmative, . . then before you would be authorized to set it aside you would also have to answer this question in the affirmative, and in answering that question in the affirmative you answer it under the law as given you in charge by the court, applied to the facts in evidence in this case. If you answer that question in the affirmative, before you would be authorized to set aside that deed by your verdict you would also have to answer this question: was that intention known to the claimant in this case, Mr. Eugene Benton, or did he have reasonable grounds, from all the facts and all the circumstances that surrounded him at the time, to suspect that that was the intention of Mr. Campbell? If you answer that in the affirmative, why then it would be your duty to return a verdict saying that 'We, the jury, find the property subject.' But in the event you reach the conclusion that this deed was not made by Mr. Campbell for the purpose of hindering or delaying or defrauding creditors, if you reach that conclusion in the case, you would not be authorized to set aside the deed; but if you reach the conclusion, and I am putting it so you can fully understand the principles of

law applicable to this case, if you reach the conclusion that it was the intention of Mr. Doyle Campbell at the time that he executed that deed to delay or hinder or defraud his creditors, if that intention was not known to Mr. Eugene Benton, or if the circumstances at that time were not sufficient to put him on notice that that was the intention of Mr. Doyle Campbell, and if he accepted it in good faith to secure a bona fide debt, why then under those circumstances it would be your duty to return a verdict in favor of the claimant in this case. And that you may clearly understand this principle of law I will read it to the jury again. 'The following acts by debtors shall be fraudulent in law against creditors . . , and as to them null and void: . . Every conveyance of real or personal estate, by writing or otherwise, . . had or made with the intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid.' Now that is the principle of law that should govern and guide and control the jury in reaching a verdict in this case; and even though you may believe that at the time that this deed was executed and at the time that it was accepted by Mr. Benton, although you may believe that Mr. Benton actually advanced to Mr. Campbell on the strength of that deed $2,160.88 to pay the Georgia Bond & Investment Company, and although he may have paid the clerk of the superior court of Jasper County $3 for recording the papers and $3 to the clerk of the superior court of Putnam County, and although he may have sent a check to Mr. Campbell for $7,833.12, if the intention of Mr. Campbell in making that conveyance was to hinder or delay or defraud his creditors and that intention was known to Mr. Eugene Benton in this case, even though he may have advanced money upon that paper, under this principle of law it would be void so far as the rights of these creditors are concerned."

The court then gave to the jury the instruction set out in the opening of this division of the opinion. As we have seen, this instruction, standing by itself, would, in the absence of further instruction upon the subject, have been erroneous. This being so, counsel for the plaintiffs insist that this instruction amounted to an incorrect principle of law as to a material issue in the case, and that this error was not rendered harmless by the previous

statement of the correct principle, as the judge did not expressly call the attention of the jury to the incorrect statement and retract it. It is true, that, "where an incorrect principle of law is charged as to a material issue, the error is not rendered harmless by a subsequent statement of the correct principle, unless the judge expressly calls the attention of the jury to the incorrect statement and retracts it." *Rowe* v. *Spencer, 132 Ga.* 426 (64 S. E. 468). To the same effect are the rulings in *Brush Electric Light &c. Co.* v. *Wells, 103 Ga.* 512 (30 S. E. 533); *Augusta Ry. &c. Co.* v. *Smith, 121 Ga.* 32 (48 S. E. 681); *Central of Georgia Ry. Co.* v. *Ray, 133 Ga.* 126 (65 S. E. 281); *Grooms* v. *Grooms, 141 Ga.* 478 (81 S. E. 210). While this is true, we do not think the present case falls within that rule. Where the court gives in charge to the jury an incorrect statement of law as to a material issue, and thereafter gives to the jury a correct statement of the law applicable to such issue, the giving of the latter charge does not correct the error, for the reason that the jury are left to choose between the contradictory principles, unless the court distinctly withdraws the incorrect instruction and tells the jury that the correct instruction is given in lieu of the incorrect one. The instruction complained of was not incorrect or erroneous as far as it went. At most it was an incomplete charge which would have been erroneous if not completed. If completed, either by what had preceded or what followed it, it would not be erroneous. It did not leave the jury with two inconsistent and contrary instructions for their guidance. *Sutton* v. *Ford, 144 Ga.* 587, 591 (87 S. E. 799, L. R. A. 1918D, 561, Ann. Cas. 1918A, 106); *Brown* v. *Kendrick, 163 Ga.* 149, 161 (135 S. E. 721). A case very much in point was that of *Spence* v. *Morrow, 128 Ga.* 722 (58 S. E. 356). In that case Mr. Justice Evans said: "Complaint is made that the court erred in charging the jury that 'Every sale made with intention to defraud the creditors of the vendor, if such intention is known to the vendee (the claimants in this case), is absolutely void as against such creditors.' The exception does not complain of the charge as far as it goes; but it is contended that it is erroneous, because the court should have added, 'if such intention is known to the vendee,' or 'could have been known by the vendee,' and 'the vendee was without notice or ground for reasonable suspicion.' When considered in connection with the entire

charge, the criticism of this excerpt loses its force. The court fully covered the law respecting a transfer of property by an insolvent debtor, in the general charge."

Besides, after giving the instruction complained of, the court read to the jury section 4530 of the Code of 1910, which declares that "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties." The court then read to the jury section 4626 of the Code of 1910, which declares that "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." So we are of the opinion that the court fully and fairly presented to the jury the principles of law applicable to the issues raised in this case, and that a new trial should not be granted because of the instruction with which we have been dealing.

5. It is strenuously urged by counsel for the plaintiffs that the verdict in this case is contrary to the evidence. We have carefully considered the evidence, and hold that the same is sufficient to support the verdict.

*Judgment affirmed. All the Justices concur.*