No. 32.—JEFFERSON C. THOMASSON, administrator of Littleton Thomasson, plaintiff in error, *vs.* JOHN W. DRISKELL, defendant in error.

[1.] The certificate of a Clerk of the Inferior Court, in relation to any matter, or thing, pertaining to his office, should be certified under his hand and ·seal of office, if there be one ; if not, then under his private seal, to make the same competent evidence, according to the provisions of the Act of 1830.

[2.] It is not competent to prove the contents of a will by *parol*.

[3.] The admissions of an administrator, made before he was appointed such, are not admissible to prejudice or affect the rights and interests of the heirs and creditors of the estate represented by him.

[4.] The answers to cross-interrogatories, though not offered by the party who had them executed, may be read by the adverse party, for the purpose of laying the foundation for impeaching the same witness whose testimony taken under another commission, has been read to the Jury—the Court allowing the other party to read the direct interrogatories.

[5.] When the foundation has been laid for impeaching a witness, on˜the ground of having made different or contradictory statements, by inquiring as to the time, place, &c. as required by the rule, the witness called to prove

the different statements, will not be confined to any particular time. The rule which requires time and place to be stated, is intended for the benefit of the witness sought to be impeached, so as to refresh his recollection, or explain the matter, if he can.

Trover, in Spalding Superior Court. Tried before Judge STARKE. November Term, 1852.

This was an action of trover, brought by the plaintiff in error against the defendant in error, for the recovery of six negoes, Priscilla and her five children.

The defendant filed the pleas of general issue and the Statute of Limitations.

There was much, and conflicting testimony introduced. The plaintiff proved the possession of the negroes by the defendant, their value, and demand and refusal, and read in evidence his letters of administration, and closed his case.

James Betts sworn for defendant, testified that he was the brother of Mrs. Thomasson, mother of plaintiff and defendant. She was the daughter of Abram Betts, deceased. Her first husband was John Driskell, father of the defendant. Knew the girl Priscilla; first saw her in possession of his father. A few days after he bought her, she went into the possession of John Driskell, in 1812, or '13, who was then married to his sister, Mrs. Thomasson. Up to 1816, she was occasionally in possession of witness' father. After 1816, she remained in possession of Driskell until his death in 1819; she then remained in possession of the widow until 1821, when Mrs. Driskell married Thomasson, plaintiff's intestate. In 1827, Mrs. Thomasson, witness, and Littleton Thomasson had a conversation. The former said to Thomasson that she wished the property coming from her father's estate to be divided equally between her two sets of children, by Driskell and Thomasson. The latter said he would not consent to it, and remarked to her that when he married her he had nothing. He named the negroes and other property, and said that "what you had at the time we married, was for her and her Driskell children, but what is now coming from your

Thomasson *vs.* Driskell.

fathers estate, I claim for myself and children." She was not satisfied, and Thomasson said he would pay the Driskell children five hundred dollars out of his estate, to make them equal, and gave witness an order to pay that sum to them as executor of his fathers estate. Witness then asked him if he relinquished all claim to Priscilla? Thomasson said he did. Witness' father died in 1826. Uncertain whether Priscilla had any children at the time of the conversation.

Joseph Betts sworn, corroborated the testimony of Abram Betts, his brother.

Defendant closed, and plaintiff in rebuttal read in evidence the will of John Driskell, made in May, 1816, in which nothing was said relative to Priscilla.

Plaintiff then proposed to read in evidence a certificate attached to the answers of Richard J. Loyal, Clerk of the Inferior Court of Jasper County, to interrogatories, in substance, " that all the property, witness found by an examination of the tax-books in his office, given in by John Driskell from 1813 to 1816, was a lot of land."

Counsel for defendant objected. The Court sustained the objection, and counsel for plaintiff excepted.

Nancy Thomasson, the mother of the parties, having first relinquished her interest, sworn—testified in substance, that her father, Abram Betts, loaned the negro woman Priscilla, when a girl, to her as a nurse; that John Driskell never claimed said negro as his own; that Littleton Thomasson, her husband, paid the Driskell boys, $500; because nothing was left to them by her father's will. Counsel for plaintiff proposed to read the following part of her answers, " Thomasson gave Leah Driskell nothing, because by the will of Abram Betts, she had left to her a negro girl named Mary, the child of Sylla."

To which defendant's counsel objected. The Court sustained the objection, and counsel for plaintiff excepted.

Neither of witness' husbands claimed the negro, and it was admitted by all, that witness held the negro as a loan until her father's death.

Witness has no recollection of telling John Robinson that her father had given Sylla to her when she was a child.

Plaintiff then proposed to prove by John C. Gibson, "That Leah Driskell, now Davis, is the daughter of John Driskell deceased, and sister of the defendant; that she received a legacy under the will of her grandfather Abram Betts, and that it was a negro child named Mary, the daughter of Priscilla, and the negro received by Leah, was born after the death of John Driskell." To which counsel for defendant objected. The Court sustained the objection, and counsel for plaintiff excepted.

The will of Abram Betts was then read in evidence, in which was the following clause: "I give unto Nancy Thomasson one negro girl named Priscilla, and her increase, all but her first child named Mary; that, I give to Leah Driskell, when she comes of age."

Plaintiff proposed to prove by Reason Blesset, that a number of years before defendant administered on his father's estate, witness heard defendant express some anxiety relative to a rumor that an administration would be had upon Littleton Thomasson's estate, "and said that if the land and negroes were divided between the Thomasson children," there would not be sufficient left to support his mother."

Counsel for defendant objected. The Court sustained the objection, and counsel for plaintiff excepted.

Plaintiff then proposed to prove a conversation, by Elzy Bruce, between witness and Driskell, and the latter and Thomasson, the plaintiff, in which Thomasson claimed the negro Priscilla, and Driskell stated that he received two hundred dollars from his father's estate, and it was all to which he was entitled.

Counsel for defendant objected. The Court sustained the objection, on the ground that the alleged conversations were had many years before defendant administered upon his father's estate. And counsel for plaintiff excepted.

Defendant then read in evidence his letters of administration on his fathers estate, dated in July, 1852.

Defendant then proposed to read in evidence the answers

of Nancy Thomasson to certain cross-interrogatories in one of the setts taken out for her, (offering to read the direct ones,) for the purpose of impeaching her. Counsel for plaintiff objected. The Court overruled the objection, and counsel for plaintiff excepted.

In these answers, the witness denied that she ever claimed the negro Priscilla as the property of her first children, or that she ever stated to any one that her father had given Priscilla to her when she (Priscilla) was a girl.

Defendant proposed to read the answers of John Robinson, to interrogatories, to impeach Nancy Thomasson. Counsel for plaintiff objected, on the ground that Robinson did not state the time the conversation about which he testifies took place." The Court overruled the objection, and counsel for plaintiff excepted.

The Jury found a verdict for the defendant.

Whereupon counsel for plaintiff moved for a new trial, upon several grounds, all predecated upon the exceptions taken in the progress of the trial.

The Court refused to grant the new trial, and this decision is brought up for review.

McCune and Harman, for plaintiff in error.

A. R. Moore, for defendant in error.

*By the Court.*—Warner, J. delivering the opinion.

[1.] The first exception taken to the ruling of the Court below is, the rejection of the certificate of Richard J. Loyall, Clerk of the Inferior Court of Jasper County, as to the taxable property given in by John Driskell, as appeared from the tax-books in his office. The certificate offered in evidence was not under the seal of the Court, or the Clerk's private seal, and was properly rejected by the Court. *See Act* 1830, *Prince,* 220.

[2.] The second exception is, the rejection of that part of Nancy Thomasson's testimony in which she states the contents of

Abram Betts' will, in relation to the bequest of Mary the child of Sylla. The will itself was the highest and best evidence of the bequests contained in it, and parol evidence thereof was properly ruled out by the Court.

The third exception is to the answer of John C. Gibson, offered to prove that Leah Davis was the daughter of John Driskell, and sister of the defendant, and that she received a legacy under the will of Abram Betts, of a negro named Mary, &c. We do not perceive the *relevancy* of the first part of the testimony to the question in issue between the parties; but it was properly ruled out by the Court, on the ground that the latter part of it was an attempt to prove by parol the contents of Abram Betts' will.

[3.] The fourth exception is the rejection of the evidence of Reason Blessett, who was offered to prove the declarations of the defendant, in regard to the property in his possession, as administrator of his father's estate, sometime prior to his appointment as such administrator. An administrator cannot make any contract which will bind the estate of his intestate after his death. *Toller's Exr's*, 134. *Oneal vs. Abney*, 2 *Baily's Rep.* 317. Upon principle, therefore, the admission of an administrator, made before he was appointed, ought not to be received, to prejudice the rights of heirs and creditors, who are interested in the estate. 1 *Greenleaf's Ev.* section 179. *Plant vs. McEwen*, 4 *Connecticut Rep.* 544. *Doe ex dem, Hornby vs. Glenn,* 28 *Common Law Rep.* 33. There was no error in ruling out this evidence, nor that of Boyce, which comes within the same rule.

[4.] The next exception is, that the Court allowed the defendant to read a portion of the cross-interrogatories of Nancy Thomasson, which had not been read, for the purpose of laying the foundation of impeaching her testimony taken by another commission, and which had been read by the plaintiff, at the trial. This evidence was offered to show to the Court, that the rule which required that the attention of the witness had been called to the particular facts, time, and place, when, and where the conversation was had, in which they proposed to

Thomasson *vs.* Driskell.

show by other witnesses, was different from what she stated it, had been complied with.

If the witness had been in Court, it would have been competent for the defendant to have asked her the same question, for the purpose contemplated; the witness not being in Court, but her answers being there, to the proper question propounded to her, there was no legal objection to read the cross-interrogatories, and her answers thereto for the object stated; especially, as the Court allowed the adverse party to read the direct interrogatories, if they wished to do so. There was no question made, the record states, as to the identity of the witness.

[5.] The testimony of Robinson was also properly admitted to the Jury, though it was objected to, on the ground that he did not state the time the conversation took place with Nancy Thomasson. Mrs. Thomasson stated, in answer to the question, whether she did not in the fall of the year 1827, in Jasper County, at her place of residence, tell John Robinson, that she could not sell Priscilla to him, because she was given to her when a child, and that she raised her; " that she did tell John Robinson, that she could not sell, nor swap Priscilla, because her father had given the negro to her in his will, but not when she was a child." Robinson states, that at the house of Mrs. Thomasson and her husband's, where he stayed all night, Mrs. Thomasson said " she could not, nor would not part with Priscilla, for the reason her father had given the negro to her when a child, and she had raised her, and she would not part from her on any terms whatever."

The rule in regard to time and place, &c. applies to the witness whose testimony is sought to be impeached, and not to the witness who is called to prove the contradictory statements. She denied she had ever said to Robinson, or any one else, that her father had given the negro to her when a child. Robinson was introduced to prove she did tell him so. If she ever did tell him so, the time and place is not material; but the time and place in the question, when put to her, to lay the foundation for impeaching her testimony, is *material*, in order

to refresh her recollection, and enable her to· explain the matter if she could.

We find no error in the rulings of the Court in this case, which will authorize us to control its discretion, in refusing the motion for a new trial.

Let the judgment of the Court below be affirmed.