POPE *et al. v.* POPE *et al.* (two cases.)

1. If a paper purporting on its face to be a codicil to an existing will which the testator had previously signed, refers to the will by date, and also, by mentioning certain of its provisions, unequivocally identifies it as the instrument to which the paper in question is intended as a codicil, it will be presumed that the testator, at the time of executing the codicil, knew the contents of the original will, and the due execution of the codicil, under such circumstances, will amount to a republication of the will, although the codicil is not actually attached to the will itself.
2. The validity of a paper purporting to be a deed and of a paper purporting to be a will, both of which had been signed by the same person, being the main questions in issue, an assignment of error alleging that the court erred in allowing certain named witnesses " to testify with reference to the statements made by the testator with reference to the execution of the deed and the execution of the will," over a general objection that these witnesses were incompetent to testify " either as to what the testator said with reference to making the will or the deed," they being beneficiaries under the will, grantees in the deed and parties to the case, and the party who executed these papers being dead, is too vague and indefinite for consideration and determination by this court.
3. It does not affirmatively appear that the court erred in admitting in evidence the bottle and the note, or the evidence as to the find-

ing of the same. This evidence may have had some bearing on the questions in issue, and its probative force was for the jury.

4. Although in charging on the law of duress the judge read certain sections of the code relating to this subject, and also to fraud and undue influence, not strictly pertinent or applicable, this was not in this case reversible error, it not being at all probable that the jury were thereby misled as to the real issues of fact presented for their determination.

5. The evidence in each case was sufficient to warrant the verdict rendered; and as substantial justice has been done and the result has been approved by the trial judge, his refusal to set these verdicts aside will not be reversed.

November 26, 1894.

Appeal, etc. Before Judge LUMPKIN. Fulton superior court. March term, 1894.

Charles W. Pope as executor offered for probate the will of Thomas T. Pope. Mrs. Martha J. Pope, widow of the deceased, T. U. Vaughn and others, children of a deceased daughter of T. T. Pope, and G. Y. Pierce and others, children of another deceased daughter of T. T. Pope, caveated the will, upon the grounds that he was *non compos mentis;* that the will was procured by C. W., J. T. and Neal Q. Pope, three of the sons of T. T. Pope, when T. T. Pope was very ill and knew nothing about what was going on around him; and that C. W., J. T. and Neal Q. Pope were not satisfied with the will, but on July 1, 1891, prepared a deed and procured the signature of T. T. Pope to it, while he was still very sick and knew but little, if anything, of what was going on around him, in which deed it was endeavored to convey all of the real estate belonging to T. T. Pope to C. W., J. T. and Neal Q. Pope and certain others of their favorite brothers and sisters. By amendment the grounds of caveat as to the mental and physical condition of T. T. Pope, and as to his signature not being of his free will, were added to. The will gave to Mrs. Martha Pope in lieu of dower $800, to the children of Mrs. Vaughn $500, and to the children of Mrs.

Pierce $500; and devised all the balance of testator's estate to C. W., J. T. and Neal Q. Pope, Lou Redding, Mamie Evans and Mittie Mayson, testator's children, and Killie Mauldin his grandchild. The will was dated May 15, 1891. By a codicil dated May 25, 1891, Mrs. Redding having died, $25 were bequeathed to her representative for her burial expenses; and the share which would have gone to her under the will was bequeathed to C. W., J. T. and Neal Q. Pope, Mamie Evans and Mittie Mayson. The ordinary found in favor of the propounder, and the caveators entered an appeal to the superior court.

By their petition to the superior court, Mrs. Pope, the children of Mrs. Vaughn and the children of Mrs. Pierce alleged: T. T. Pope died about July 23, 1891, the owner of 202½ acres of land lot 156 in the 17th district of Fulton county, less about five acres previously sold off, worth about $20,000. He had several other heirs at law, to wit, C. W., J. T. and N. Q. Pope, Mrs. Redding, Mrs. Evans, Mrs. Mayson and Killie Mauldin. He was more than seventy-one years old when he died. Before his last sickness he was healthy and strong in body and mind. He was taken sick early in April, 1891, his health became very much impaired in a very short time, and about May 14, he was taken so dangerously sick that physicians to alleviate his sufferings administered, from time to time, a great deal of morphine or other opiates, under the influence of which to a greater or less extent he was kept from the time he was taken sick until his death. From the influence of the opiates and his suffering so much pain, his mind became and was from the time he became sick, and especially from the time he was taken so seriously sick until his death, greatly impaired, and he was unable physically or mentally to attend to any kind of business. These facts were well known to his children, but not-

withstanding, C. W., J. T. and N. Q. Pope had a will
prepared dated May 15, 1891, while he was very ill and
knew nothing about what was going on around him,
and procured his signature to it. The substance of the
will was then stated. The procurement of this will was
a fraud upon T. T. Pope and was not his act, but was
a scheme upon the part of defendants to get the bulk of
his property. At that time he was not expected to
live more than a day or two, but as it happened he con-
tinued to live several weeks, during which time defend-
ants, not being satisfied with the will but preferring to
get hold of the property without any charges against it,
prepared and procured his signature to a deed in which
his entire real estate was conveyed to defendants. This
deed was procured from him while he was very sick,
and while his mind was so impaired that he was inca-
pable of attending to any business and did not realize
what he was doing. His personal estate is not worth
more than seven or eight hundred dollars and he left no
other realty, and petitioners are cut entirely out of par-
ticipation in his estate by reason of the deed, unless it
can be annulled and set aside. The defendants named
were said other heirs of T. T. Pope and C. W. Pope as
his executor, he having proved the will in common form
and qualified as executor. The prayer was, that the
deed be set aside. From the copy deed attached it ap-
pears that it was executed July 1, 1891, upon an ex-
pressed consideration of ten dollars and love and affec-
tion to the grantees. By amendment petitioners alleged:
At the time T. T. Pope signed the deed, if he did sign
it, he had been sick about six or eight weeks. On May
15, 1891, he was taken very seriously sick and from that
time to his death, July 20, 1891, his strength gradually
gave way, and on July 1, 1891, he was exceedingly fee-
ble both in body and in mind. From May 15, until his
death his three eldest sons, C. W., J. T. and N. Q. Pope,

remained with him the greater portion of the time and exercised great influence and control over him, and were able to and did influence him to do whatever they desired him to do. They confederated to obtain from him the deed, and did fraudulently procure it from him, while his mind was thus weak and while his sickness was of the severest type; and thereby defrauded him out of the land. There was no consideration passing from the vendees to him; but if they did pay him the ten dollars, the price was totally inadequate, the property being worth at least $20,000.

By agreement the issues on the caveat and the deed were tried together. Separate verdicts were rendered, the jury finding that the deed be cancelled, but finding in favor of the will. Motions for new trial were made on the grounds appearing in the opinion, and were overruled.

ARNOLD & ARNOLD, for Charles W. Pope *et al.*
SIMMONS & CORRIGAN, for Martha J. Pope *et al.*

SIMMONS, Chief Justice.

T. T. Pope died July 20th, 1891, leaving an estate consisting mainly of realty, valued at upwards of $20,-000. By a will dated May 14th, 1891, he gave $800 to his wife, Martha J. Pope, in lieu of dower, $500 to the children of his deceased daughter, Mrs. Vaughn, and $500 to the children of another deceased daughter, Mrs. Pierce; and the residue of his estate was to be divided equally between his surviving sons and daughters and one grandchild. By a codicil dated May 25th, 1891, the share of one of his daughters, who had died subsequently to the date of the will, was given to his other children. Afterwards he made a deed, dated July 1st, 1891, conveying his real estate to the same persons to whom his property had been devised, except his wife and the grandchildren first mentioned, the consideration

expressed in the deed being $10, and love and affection to the grantees. When the will was offered for probate, the widow and these grandchildren filed a caveat, on the ground that at the time of its execution the testator was *non compos mentis*, and that the same was obtained by the exercise of undue influence on the part of his sons, C. W., J. T. and N. Q. Pope. A petition to set aside the deed was filed by the same parties upon similar grounds, which are set out in the reporter's statement. The effect of this deed, it was alleged, was to cut the plaintiffs entirely out of participation in the grantor's estate, his personalty not being worth more than $700 or $800. The ordinary found in favor of the will, and the caveators entered an appeal to the superior court. In that court both cases were tried together, and the jury found in favor of the will and against the deed; whereupon a motion for a new trial was made in each case by the losing parties. In addition to the general grounds that the verdict was contrary to law and the evidence, the motion in the will case was based upon the grounds hereafter set out in the first and second divisions of this opinion, and the motion in the deed case upon the grounds dealt with in other parts of the opinion.

1. It was complained that the court erred in charging the jury as follows: "If, on May 25th, 1891, T. T. Pope, deceased, executed a codicil to his will of May 15th, 1891, and in this codicil referred to and recognized the previous will as his will, this would amount to a republication of the original will, and would render such original will valid, provided the codicil was executed voluntarily by the testator and he had a sound and disposing mind, and the codicil was not itself invalid under some of the principles of law given you in charge by the court." This was alleged to be error, because there was no evidence which established that T. T. Pope, at the

time of making the codicil, knew, what was in the will of May 15th, 1891, and no evidence that the same was read over to him on that occasion; and further, because the codicil was not attached to the will.

The court did not err in the charge complained of. The codicil expressly refers to the will as follows: "I, T. T. Pope, . . . do make the following codicil to my will of May 15th, 1891, as since said will my daughter, Lutisha Redding, has departed this life. . . . The share of my estate . . that under the provisions of my said last will would have gone to my deceased daughter Lutisha . . is to be diverted from her, her estate or heirs, . . and turned over to my surviving children," etc. This sufficiently identified the will, and rendered it unnecessary that the codicil should be attached to it. "The annexation need not be physical, provided the language of the codicil is sufficiently clear to identify the will referred to." 3 Am. & Eng. Enc. of Law, title Codicil, p. 292; Beach on Wills, §81, and authorities cited. Nor was it necessary that the original will should be read over to the testator at the time of executing the codicil. The will having been properly identified, it will be presumed that the testator knew its contents, and the due execution of the codicil amounted to a ratification and republication of the will. Code, §2478; *Jones* v. *Shewmake*, 35 *Ga.* 151, 154; *Burge* v. *Hamilton*, 72 *Ga.* 568.

2. It was complained that "the court erred in allowing C. W., N. Q. and John Pope to testify with reference to statements made by T. T. Pope with reference to the execution of the deed and of the will; counsel for Mrs. Martha Pope having made a general objection to the competency of said witnesses to testify, either as to what the testator said with reference to making the will or the deed, upon the ground that they were beneficiaries under the will, executor of the will and parties to the suit to probate the will, and vendees in the deed and

parties to the suit to set aside the deed, the other parties to the contract being dead." This assignment of error is too vague and indefinite for consideration and determination by this court. Where the admission of testimony is assigned as error, the bill of exceptions or the motion for a new trial should set out the testimony objected to, or the substance of it. It is not enough that the testimony may be found in the brief of evidence. As was said in a former decision of this court: "Whether it might be ascertained by looking out of the motion and exploring the brief of evidence, we are not called upon to say, inasmuch as our dealings are only with errors plainly and distinctly assigned." *Sweat* v. *The State,* 90 *Ga.* 325. Even if these witnesses were not competent to testify as to anything at all said by the testator upon the subject mentioned in the assignment of error, the illegal testimony may not have been so far material or prejudicial as to require a new trial; and in order to determine as to this, it would be necessary to know what the testimony was.

3. One of the grounds of the motion for a new trial in the deed case was, that the court admitted in evidence, over the objection of the defendant that the same was irrelevant, a bottle containing a white powder and bearing a label with the inscription " poison " and the picture of a skull and cross-bones thereon ; also a note, and the testimony of certain witnesses as to the finding of the bottle and the note. There was evidence that the note when found read as follows: " Martha (or Mattie) : Give Mr. T. T. P. ¼ of this bottle will kill the old devil don't put in his eggs as you did before put it in his coffee watch Mr. C. & J. I will come out Sunday again. C. W." Mrs. Pope, the plaintiff, was named Martha, and was also called Mattie, and C. W. were the initials of Mrs. Woodward, her brother's wife, who frequently came to see her at the grantor's house during

his last illness, and usually came on Sunday. The theory
of the plaintiffs was, that certain of the defendants, in
order to induce the grantor to make the deed and ex-
clude his wife from participation in the property con-
veyed, had caused him to believe that she intended or
had attempted to poison him. There was some evidence
tending to show that the note in question was in the
handwriting of one of the grantees, a son of the grantor,
who was with him frequently about the time the deed
purported to have been made; and the plaintiffs sought
to make it appear that the writer of the note had thereby
attempted to create the impression upon the mind of
the grantor that some other person, probably Mrs.
Woodward, had written the note to Mrs. Pope and knew
of an attempt on her part to poison him. It was ob-
jected that there was no evidence that the grantor's at-
tention had been called to the bottle and note prior to
the execution of the deed. It is true the weight of the
evidence is to the effect that the bottle and note were not
found until after the date of the deed, but there was
some evidence tending to show that they were found
before that time; and there was evidence that prior to
that date, about a month or six weeks before his death,
he had expressed fears of poison and required his wife
to taste his food and medicine before he would take it.
There was no evidence, outside of the deed itself, show-
ing that the deed was actually delivered at the time it
purported to have been made, or as to when it was
actually delivered. That something had been said to
the grantor about this bottle and his wife in connection
therewith, could be inferred from a statement which ap-
pears to have been made by him to her brother, soon
after bottle and note were found, that he was afraid
" they " were not going to do right by her, that they had
been telling him something about a bottle of poison,
and had come telling him " a rigmarole about poison

being found near the knitting mills." It appears that the bottle and note offered in evidence were found near the knitting mills, a short distance from the grantor's house. There was evidence as to bad feeling towards Mrs. Pope prior to the date of the deed, on the part of the grantee who was supposed to have written the note, and other grantees therein. These grantees were children of a former wife of the grantor, and had opposed his marriage to the plaintiff. If the note was written by this grantee, it tended, in connection with the statement of the grantor above referred to, to show the existence of a scheme to prejudice the grantor against his wife, which may have antedated the delivery of the deed and operated to induce the same. Even if the parties concerned in this scheme did not bring the note and bottle to the grantor's attention until after the deed was made, we cannot say that the evidence in question is wholly without significance as to their motives and conduct previously. Its probative force was for the jury.

4. Certain sections of the code and parts of other sections read by the court to the jury in charging them, as to the law of duress and as to fraud and undue influence, were not strictly pertinent or applicable to the facts of the case. This, however, was not, in this case, reversible error, it not being at all probable that the jury were thereby misled as to the real issues of fact presented for their determination.

5. There was sufficient evidence in each case to warrant the verdict rendered therein; and it appearing that substantial justice has been done, and the result having been approved by the trial judge, his refusal to set these verdicts aside will not be reversed.

*Judgment affirmed.*