## BROWN et al. v. KENDRICK et al.

1. On the investigation of an issue of devisavit vel non, the admission of an. executor before qualification, or of a legatee, unless the sole legatee, shall not be admissible in evidence to impeach the will.
(a) To this general. rule there is an exception:  If the admission be in reference to the conduct or the acts of the executor or legatee himself as to some matter relevant to the issue on trial, the same will be admitted to impeach the will, although made by the executor before qualification, or by a legatee who is not the sole legatee.
(b) Declarations made by a person before, the execution of a will, but who is afterwards named therein as executor and a legatee, are inadmissible to impeach the will as those of an executor and legatee.
2. Declarations or admissions of the propounder of a will, made before the execution of the instrument and before he became clothed with the trust, are inadmissible to impeach the will when offered by caveators as the declarations or admissions of a party to the record.
3. A ground of a motion for a new trial must be complete in itself, and this court will not look to the brief of evidence to ascertain whether there is merit in such ground.  Applying this rule we can not say that the trial judge erred in rejecting the letters referred to in the first division of the opinion, when offered the second time by caveators, for the purpose of impeaching one of the propounders who had been called and examined by the caveators under section 5879 of the Code, it not appearing from said ground that the witness had testified to any facts contradictory · of the statements contained in said letters.
4. The court below did not err in admitting in evidence, over objection of the caveators, the testimony set out in the fourth division of the opinion.
5.   The court did not err in giving to the jury the instructions dealt with

---

Appeal and Error, 3 C. J. p. 964, n. 42.
Evidence, 22 C. J. p. 230, n. 64; p. 407, n. 71.
Trial, 38 Cyc. p. 1634, n. 15; p. 1785, n. 90..
Wills, 40 Cyc. p. 1023, n. 29; p. 1165, n. 87; p. 1290, n. 65.

in the fifth, sixth, seventh, eighth, ninth, and eleventh divisions of the opinion.

6. The complaint against the charge of the court as a whole is without merit.

7. The verdict is supported by the evidence.

No. 5250. NOVEMBER 15, 1926.

Appeal. Before Judge Malcolm D. Jones. Peach superior court. December 18, 1925.

*Houser & Mathews, Harris, Harris & Popper, Troutman & Troutman, John R. L. Smith,* and *Joseph LeConte Smith,* for plaintiffs in error.

*C. L. Shepard, A. C. Riley, Brown & Brown,* and *Hall, Grice & Bloch,* contra.

HINES, J. W. R. Brown died on January 13, 1925. On February 2, 1925, Tula P. Kendrick and William B. Reeves filed for probate an instrument purporting to be the last will and testament of W. R. Brown, with a codicil thereto. This instrument was executed on July 28, 1924, and named Mrs. Kendrick as sole executrix. The codicil was executed on August 19, 1924, and William B. Reeves was thereby made a joint executor of the instrument purporting to be the last will of W. R. Brown. Lawrence Brown, Mrs. Nell Walker Freeman, Mrs. Ruby Walker Brazelton, and Miss Leone Walker, the last by next friend, filed a caveat to the probate, on the grounds: (1) that the testator was not of sound and disposing mind; (2) that the testator executed said will and codicil when he was mentally incompetent to make a valid will, and had been in such condition for more than a year prior thereto, and that said condition continued until the time of his death; (3) that the testator did not execute said will and codicil freely and voluntarily, but was moved to make the same by undue influence and persuasions over him by J. D. Kendrick and W. B. Reeves, for which reason it was not the will of the said W. R. Brown. On September 8, 1925, the caveat was amended by the following allegations: For about eighteen months prior to the execution of said alleged will the mental capacity of W. R. Brown was greatly impaired and was continually growing worse. During that time he sojourned alternately in the homes of W. B. Reeves, one of the nominated executors, and J. D. Kendrick, one of his heirs at law and the husband of the other nominated executor. Reeves and Kendrick, by impressing Brown with an

undue sense of his obligations to them for their care and attention, by suggestions to him personally and through a highly reputable attorney, by playing upon his resentment at the failure of a bank which had been managed and controlled by a long-time friend of his and with which he had on deposit a large amount of money, and by suggestions that in the absence of a will creditors of said bank would get a large part of his estate, caused said paper to be signed by Brown, thereby substituting their will for his wishes and will. Brown, when rational and normal, desired that his property should go according to the Georgia law of inheritance. By the provisions of said pretended will, some of his heirs, including caveators, were excluded from participation in his estate, and some of them were given less than such law would allow them. For this reason said instrument was not the will of Brown, but was the will of Reeves and Kendrick substituted by them by the exercise of undue and improper influences over him. Brown was old and feeble, both in body and mind, and there was great disparity in mental capacity between him and Reeves and Kendrick, and he was unable to resist or avoid the effect of their influence so subtly and insidiously exerted over him by their suggestions. The mind of Brown during said time was similar to that of a child, in that he would readily adopt almost any line of thought or conduct which might be suggested to him, which was known to Reeves and Kendrick. Brown all his lifetime was very much devoted to the pursuit of wealth, and had a deep and abiding sense of the importance of money and property. While during the latter period of his life his nature had changed to one of gross indifference to financial matters, it was easy to arouse his old disposition in that regard by suggestion. This was well known to Reeves and Kendrick; and they unduly and improperly played upon the fears of his money or property being lost to the creditors of said bank, to the end that their will was substituted for his wish, to the manner and extent above set forth.

On the trial the jury found in favor of the propounders and against the caveators. The caveators moved for a new trial upon the general grounds. By an amendment to their motion they added eleven grounds, one of which is as follows: Caveators offered in evidence two letters from William B. Reeves, propounder, to Lawrence Brown, caveator. The first of these was dated, At-

lanta, Ga., 7-14-24. The second was dated Atlanta, Ga., 7-21-24. Their substance hereafter is stated in the first division of this opinion. Counsel for the propounders objected to the introduction of said letters, on the ground that an admission or declaration of an executor is not admissible unless it be within the terms of section 3870 of the Civil Code of 1910. The court sustained said objection and excluded said evidence. Upon this ruling caveators assign error on the ground that the writer was one of the nominated executors of the will offered for probate, was a legatee under the will, and was one of the propounders of the will and a party to the record, and said letters related to and explained his own conduct and acts as to matters relevant to the issue. They further say that the exclusion of said letters was especially erroneous because the writer was one of the persons charged in the caveat with exercising undue influence upon the testator in order to procure the execution of the will, and said letters were admissible to explain his conduct and to ascertain his motive.

The other special grounds will sufficiently appear in divisions 3 to 12, inclusive. The court overruled the motion for new trial, and the caveators excepted.

1. Were the letters of Reeves, who was one of the propounders of the paper offered for probate, and one of the nominated executors thereof and a legatee under the same, and written to Lawrence Brown, one of the caveators, admissible when offered by the caveators to impeach the alleged will; these letters having been written prior to the execution of this instrument and before the writer was made a legatee and before he was named as executor of the instrument propounded for probate? The trial judge rejected these letters, and the caveators complain of this ruling. In support of their contentions they rely on the cases of *Harvey* v. *Anderson,* 12 *Ga.* 69, *Williamson* v. *Nabers,* 14 *Ga.* 286, *Morris* v. *Stokes,* 21 *Ga.* 552, *Jackson* v. *Jackson,* 32 *Ga.* 325, *Dennis* v. *Weekes,* 46 *Ga.* 514, *Dennis* v. *Weekes,* 51 *Ga.* 24, and *Ginn* v. *Ginn,* 142 *Ga.* 420 (83 S. E. 118). In each of these cases the statements or admissions were made after the execution of the paper propounded for probate, and all of them had reference to the conduct or acts of the executors or legatees as to some matter relevant to the issue of devisavit vel non, except *Williamson* v.

*Nabers,* in which one of the statements had reference to the mental condition of the testator. In *Harvey* v. *Anderson* the statements admitted were those of the scrivener who wrote the will, who was a legatee thereunder, and who was the executor and propounder thereof, and the statements were made after the will was executed and referred to his acts and conduct in the preparation of the will. In *Williamson* v. *Nabers* the admissions were those of the widow of the testator, the executrix of the will, a legatee to the extent of a life-interest in the whole of testator's property, and the propounder of the will. They related to the state of mind of the alleged testator and to her efforts to get the testator to make a will. Besides, this case was decided before the adoption of the Code of 1863. In *Morris* v. *Stokes* the court held the sayings of a principal legatee, who was the uncle and guardian of the testator, touching his conduct in procuring the execution of the will propounded, were admissible on the ground that he was a real though not a formal party to the record. In *Jackson* v. *Jackson* the sayings of an executor, who was also a legatee under the will, were held admissible in evidence against the will, because they were part of the res gestæ. In *Dennis* v. *Weekes* the admissions were made after qualification of the executor; and proof of the conduct and acts of the executor prior to his qualification, in procuring as agent of testator exemption of one from military service to act as overseer for testator on the ground that testator was of unsound mind, was permitted because such conduct and acts were relevant to the issue of insanity which was being made. In *Ginn* v. *Ginn,* the instrument offered for probate was attacked as a forgery. In that case "Evidence was admitted tending to show that, after the death of the wife of the alleged testator, two of the legatees under the will, who would receive large legacies if it were established, at different times made admissions to the effect that there was no will, but that it was necessary to make one in order that they might obtain the estate, and that they had procured two witnesses who would sign a will and were looking for a third, . . and that one or both of them offered money to obtain such false witnesses."

The Civil Code, § 3870, lays down the rule as follows: "On the investigation of an issue of devisavit vel non, the admission of an executor before qualification, or of a legatee (unless the

sole legatee), shall not be admissible in evidence to impeach the will, except the admission be in reference to the conduct or acts of the executor or legatee himself, as to some matter relevant to the issue." The provisions of this section first appeared in the Code of 1863, as section 2406. It had its origin in codification, and not in statute. Under this section the admissions of an executor before qualification, or of any legatee, except he be the sole legatee, are not admissible to impeach the will, unless the admissions have reference to the conduct or acts of the executor or legatee as to some matter relevant to the issue. Generally, to make the admissions of a person admissible under this section, to impeach the will upon an issue of devisavit vel non, they must be made by the executor or legatee after the execution of the alleged will. In other words, he must be an executor or legatee at the time the admissions are made. Furthermore, the executor must have qualified, cr the legatee must be the sole legatee. The exception to this general rule is where a person who afterwards becomes executor or legatee has made admissions prior thereto, having reference to his conduct or acts as to some matter relevant to the issue. The general rule above stated seems to be supported by the weight of authorities in other jurisdictions. It has been held that declarations made before its execution, by parties who afterwards become legatees under the will, are not admissible against the validity of the will. 2 Schouler on Wills (6th ed.), § 809; In Re Ames, 51 Iowa, 596 (2 N. W. 408); Burton *v.* Scott, 3 Rand. 399, 407; Thompson *v.* Thompson, 13 Ohio St. 356, 363. So declarations made before the declarant has qualified as executor or administrator are inadmissible to impeach the will upon an issue of devisavit vel non. Plant *v.* McEwen, 4 Conn. 544; Whisner *v.* Whisner, 122 Md. 195 (89 Atl. 393); Smith *v.* Prudential Insurance Co., 147 App. Div. 580 (132 N. Y. Supp. 529); Coble *v.* Coble, 82 N. C. 339; 22 C. J. 407, § 486(b). So this court has held that the admissions of an administrator, made before he was appointed such, are not admissible to prejudice or affect the rights of heirs or creditors. *Thomasson* v. *Driskell,* .13 *Ga.* 253. So admissions made by a person before he becomes the guardian of minor children can not properly be held to be binding upon them. *Johnston* v. *Coney,* 120 *Ga.* 767 (48 S. E. 373). So the admissions or declarations of an executor are only com-

petent as to his own acts after he becomes clothed with the trust. *Godbee* v. *Sapp,* 53 *Ga.* 283. This rule is based upon the presumption that no person will make any declaration against his interest unless it is founded in truth. In Re Ames, supra. Until the will is executed, no person has an interest thereunder as an executor or legatee; and declarations made by such person are not hostile to any interest or claim which he had under such an instrument. Declarations of a person before a will is executed, who afterwards becomes executor or a legatee thereunder, made before the execution of the instrument, are never admissible, unless they are made in reference to his conduct or acts as to some matter relevant to some issue involved in the probate of the instrument. The section of the Code now under consideration now embraces the applicable law; and all conflict between it and the decisions of this court prior to the adoption of the Code of 1863 must yield to the law embraced in this section.

But it is insisted that when a person is both executor and a legatee his admissions or declarations are admissible to impeach the will. This contention is based upon the proposition that an individual who is both an executor and legatee has a greater interest in the probate of the will than he would have if he were only executor or legatee, and that for this reason his admissions or declarations would have greater weight than if made by him as executor or legatee only. The vice in this argument is that a person has no interest under a will as legatee or executor until the instrument is executed. These letters were written prior to the execution of the will of the testator. In the first of these letters the writer stated that the mind of the testator was very bad at times, that he showed very little affection for any one, that the writer did not believe that testator would last long in his present condition, that if he should his mind would leave him, that the property of the testator was depreciating because testator could not give it attention, that testator would let no one look after it for him, that testator had always shown much affection for the writer, but that he was unable to do much with him. None of these statements have reference to any acts or conduct of the writer in procuring the execution of this will. In the second letter the writer stated that he hardly thought it fair to the addressee to be kept in ignorance of the testator's condition when it was so

critical; that Dawson Kendrick, the husband of one of the pro-
pounders, had been to see him and stated that something would
have to be done at once, that the testator was not in his right
mind, that a guardian should be appointed for him at once and
an attendant should be hired to look after him; that testator was
living with Kendrick; that testator had made it very disagreeable
for Kendrick and his family; that this was due, in the opinion of
the writer, to a weakened and irritable condition for which testator
was not responsible; that he thought Kendrick intended to apply
for a guardianship; that he would not oppose that, but would
insist that Kendrick consult him about any business Kendrick
transacted; that he thought his uncle, the testator, intended to
make a will, as he had some favorites and some of his nieces and
nephews he disliked, and had good reasons for his likes and dis-
likes; that testator talked over his affairs with him and had little
to say to any one else about them; that he did not believe the testa-
tor had made a will, and all the heirs would share alike. He
further stated that "A will now made would hardly be considered
legal;" that he did not feel that his uncle could last much longer;
that he wished he could do something for him; that he intended
to ask all the heirs to make him one of the administrators, as it
was testator's wish; that he thought probably testator would have
Kendrick to act with him; and that if he had anything to do
with testator's final affairs he was sure none of the heirs would
have any reason to regret it. All of these statements were made
before the executor qualified. None of them contained any ad-
missions by the writer as to his acts and conduct in procuring the
execution of the instrument sought to be propounded. They cer-
tainly do not fall within the general rule above stated. They do not
fall within the exception to the general rule to which we have re-
ferred. The statements that the testator talked with the writer
alone about his affairs, that the testator had favorites among his
nephews and nieces and had good reasons for such favoritism, that
the writer did not believe that testator had made a will, and that
a will then made would hardly be considered legal, were not ad-
missions in reference to any acts and conduct of the writer as
to some matter relevant to the issues on the trial. To bring ad-
missions of an executor before qualification, or of a legatee, who
is not the sole legatee, within the above exception to the general

rule, they must have reference to acts and conduct of the executor or legatee. Mere statements of opinions by the executor or legatee do not fall within the general rule or the exception. The exception is doubtless based upon the theory that actions speak louder than words. So we are of the opinion that these letters, when first offered by the caveators, were properly rejected by the court, because they were written before the will was executed and before the writer was either executor or legatee, and because the statements therein had no reference to the conduct or acts of the writer touching any matter which was relevant to the issue on trial.

2. But it is urged that the writer of these letters was a party to the proceeding to probate this will, and that the statements made therein were admissible when offered by the caveators. It is true that "The admission of a party to the record is admissible in evidence when offered by the other side, except in the following cases: 1. In case of a mere nominal party or naked trustee. 2. Where there are several parties with no joint interest, the admissions of one can' not be received, unless the issue is of such a character that the effect of the admission can be restrained to him alone. 3. The admissons of any trustee before he is clothed with the trust. 4. Defendants in fi. fa. in claim cases, after the pendency of litigation." Civil Code (1910), § 5776. The statements in these letters were made by the executor before he became clothed with the trust, and they fall within the third exception in the section just quoted.

3. Caveators called William B. Reeves, propounder, to the stand and questioned him, stating that they called him as an opposite party for cross-examination under section 5879 of the Code. After the conclusion of his testimony caveators again offered the letters already referred to, which had already been excluded from the evidence upon objection by counsel for the propounders. Counsel for the propounders objected to their introduction upon the grounds: (1) that if they were impeaching of any of the testimony delivered by this witness, he was not the opposite party in the meaning of the Code; and (2) that the letters did not impeach anything to which the witness had testified. Counsel for caveators then stated that the letters were not offered for the purpose of impeachment only, but that they were offered in the light of the testimony of the witness upon the theory upon which they

were first offered. The judge then stated he did not think they were admissible as an admission, and if they did not impeach he did not see that they were admissible. The caveators except to this ruling, on the grounds: (a) that they were admissible as admissions made by Reeves, who was a propounder, one of the executors, and a legatee, having a joint interest in the property disposed of by the will and taking a large interest thereunder; (b) they were admissible to explain the conduct and to ascertain the motives of Reeves, who was one of the persons charged in the caveat with using undue influence to procure the execution of the will; and (c) that they were admissible to contradict and impeach Reeves. We have already undertaken to show that these letters were properly rejected when first offered, as the statements therein were not such admissions made by Reeves as executor, legatee, or party to the record as would render them admissible for the purpose of impeaching the will. We do not see how they were admissible to explain the conduct and motive of Reeves in procuring the execution of this instrument. They made no reference to any purpose on the part of the witness to procure the testator to make a will. They disclosed no conduct or act of the writer which had the remotest reference to procuring the making of a will by the testator. The last letter stated that Dawson Kendrick had been to see the writer and had proposed to have a guardian appointed for the management of the property of the testator, on the ground that he was mentally incapable of managing his own affairs. The writer stated that he did not believe that the testator had made a will, and that the heirs would all share alike. From these letters it appears that the writer contemplated an intestacy rather than testacy, and indicated an intention to become one of the administrators of his estate. We can not hold that the letters were admissible for the purpose of impeaching the witness. This ground of the motion does not disclose any statements made by the witness on the stand which are contradictory of any statements contained in these letters. To ascertain whether there was any such contradiction, we would have to compare these letters with the testimony of the witness embraced in the brief of evidence in the case; and it is well settled by the decisions of this court that we will not undertake such an investigation. Grounds of motions for new trial must be complete within

themselves. This ground should have set forth the statements made by the witness on the stand, in order that the court could determine whether these letters should have been admitted for the purpose of impeaching him. The ground being thus incomplete, we can not consider the exception to the ruling excluding them on the ground that this was error because they should have been admitted for the purpose of impeachment. *Gilbert* v. *Faircloth*, 155 *Ga.* 388 (117 S. E. 246).

4. Mrs. Tula P. Kendrick, one of the propounders, testified in their behalf about an occasion on which the testator was brought home sick, when she said he was unconscious, and she stated that Doctor Virginius Brown attended him at the time, and that Doctor White was also there when the witness reached home that afternoon. She then testified that she had testified at the hearing in this case before the ordinary, and that two of the counsel for the caveators were there; and further: "It seems I have informed these counsel, or made a statement in their presence heretofore, that these two doctors were there that night." Counsel for the caveators objected to this testimony, upon the ground that it was hearsay evidence and a self-serving declaration. The court overruled this objection and admitted this testimony. Clearly this testimony was not hearsay. It does not rest mainly upon the veracity and competency of other persons. Civil Code (1910), § 5762. It does not appear to be a self-serving declaration. The court admitted it solely for the purpose of showing knowledge on the part of the caveators that the doctors were present on the occasion testified about by this witness. We can not say that the admission of this testimony for this purpose was erroneous for the reasons assigned.

5. The court charged the jury as follows: "The burden of proof in the case originally rests on the propounders, that is on Mrs. Tula P. Kendrick and W. B. Reeves, on those persons who bring the papers here and say this is the will of W. R. Brown. The burden of proof originally is with the propounders, and they must show you the factum of the will, that is, the execution of the will, in the presence of the three attesting witnesses, the testator signing and subscribing in the presence of each other and the testator; and they must go further and show you the apparent soundness of mind of the testator, his apparent mental capacity. Now they

must make this apparent in the case in order to carry the initial burden of proof. When they do this, when they show the execution of the will according to the method prescribed by law, in the presence of witnesses and testator, all signing, the witnesses and testator, in the presence of each other, and go further and show that W. R. Brown at the time of the execution of the will was of sound and disposing mind and memory, then they have made out what the law calls a prima facie case. If the evidence stopped there, your verdict would necessarily be in favor of establishing the will; and if there was no other evidence in the case, you would necessarily find, 'We, the jury, find that the paper offered for probate is the will of W. R. Brown.' If the propounders have made out this prima facie case, then the burden is shifted to the caveators to make out the contentions set up by them in their caveat; that is, in that paper which sets up, and the amendment they have filed which sets up the objections by Lawrence Brown and the others to the probating of this will, and they must prove these objections as contended for by them." To this charge the caveators except on the grounds: (1) that it is an incorrect statement of the law; (2) that the court erred in charging the jury that the burden resting upon the propounders in the first instance could be carried simply by showing the execution of the will and the apparent soundness of mind of the testator, but should have charged the jury that the burden was also upon the propounders to show that the will was freely and voluntarily made; (3) that the burden was upon the propounders to show the soundness of mind of the testator at the time of the execution of the will, and not his apparent soundness of mind; and (4) that such burden of proof on the propounders is only an initial burden of proof, which might be shifted by the evidence so as to place the burden of proof upon the caveators.

If the court, in instructing the jury upon the burden resting on the propounders in the first instance, should have charged them that the burden was also on the propounders to show that the will was freely and voluntarily made, this omission was afterwards supplied and the error was corrected. After giving the charge complained of, the court instructed the jury as follows: "Gentlemen of the jury, my attention is called to an omission that I thought I put in my charge. I charged you that the initial burden when

the case begins is on the propounders to show the capacity of the testator to make a will, and I intended also to charge you that the burden is on the propounders to show the will was freely and voluntarily made." It is insisted by counsel for the caveators, that the omission in the original instruction as to the burden resting upon the propounders was not cured by this instruction; that the court's simple statement that he intended to charge the jury that the burden was on the propounders to show that the will was freely and voluntarily made did not cure the error in its previous instruction upon this subject; that the court had committed a reversible error, and that in order to cure this error the court should have withdrawn the previous instruction, and after calling the attention of the jury thereto, and after stating to them distinctly and unequivocally that such portion of the charge had been withdrawn, have given them the correct rule upon the issue covered by the erroneous instruction. In support of this contention counsel rely upon the principle that "where an incorrect principle of law is charged as to a material issue, the error is not rendered harmless by a subsequent statement of the correct principle, unless the judge expressly calls the attention of the jury to the incorrect statement, and retracts it." *Rowe* v. *Spencer,* 132 *Ga.* 436 (64 S. E. 468). To the same effect are the rulings in *Brush Electric Light &c. Co.* v. *Wells,* 103 *Ga.* 512 (30 S. E. 533) ; *Augusta Ry. &c. Co.* v. *Smith,* 121 *Ga.* 32 (48 S. E. 681) ; *Central of Georgia Ry. Co.* v. *Ray,* 133 *Ga.* 126 (65 S. E. 281) ; *Grooms* v. *Grooms,* 141 *Ga.* 478 (81 S. E. 210). This rule is not applicable under the facts of this case. Where the court gives in charge to the jury an incorrect statement of law as to a material issue, and thereafter gives to the jury a correct statement of the law applicable to such issue, the giving of the latter charge does not correct the error, for the reason that the jury are left to choose between the contradictory principles, unless the court distinctly withdraws the incorrect instruction, and tells the jury that the correct instruction is given in lieu of the incorrect one. The above rule, however, does not apply where one charge is in fact a correction or modification of a previous charge, and the one is not a contradiction of the other. The giving of an incomplete charge, and afterwards completing or modifying it, is a different matter from giving two inconsistent and contradictory instructions without withdrawing the erroneous instruction and

calling the attention of the jury to the erroneous charge and to the correct charge substituted in its place. *Sutton* v. *Ford,* 144 *Ga.* 587, 591 (87 S. E. 799, L. R. A. 1918D, 561, Ann. Cas. 1918A, 106).

6. The court charged the jury as follows: "If he did have that capacity, then it makes no difference to you how he disposed of it. He could have given it all to you or to me, if he had sufficient capacity to make a will. But you can consider the people to whom he disposed of the property, the ties of blood or affection between him and the legatees, in arriving at a solution of the question as to whether he had sufficient capacity; but having once arrived at that conclusion, then I charge you it is nothing to you as to how he disposed of his property; it was his property and he had a right to give it to whom he pleased, if he had sufficient capacity to make a will." The caveators except to this charge upon the grounds: (a) that it excluded from the consideration of the jury the unreasonableness of the disposition of the estate of the testator in determining whether the will was procured by undue influence; and (b) that the language "it is nothing to you as to how he disposed of his property; it was his property and he had a right to give it to whom he pleased, if he had sufficient capacity to make a will," was an unduly strong statement against their contentions in this case, and was calculated to impress the jury and did impress them with the idea that the court thought that their contentions that they should not have been left out of the will were not to be considered at all by the jury in determining whether the will was freely and voluntarily made. We do not think this charge was erroneous for any of the reasons assigned. The court was not telling the jury what they should consider in deciding this question, but on the contrary was telling them that, after they had reached the conclusion that the testator was of sound mind at the time he executed the will, they could not set aside the will because the disposition he made of his estate was unreasonable. A man of sound mind can make an unreasonable disposition of his estate, if he acts freely. The trial judge should always, upon request, charge the jury specially as to any fact relied on by either party which is true and material, so that the jury might be advised by the court of its legal effect and application to the issue they are trying. *Chastain* v. *Robinson,* 30 *Ga.* 55.

7. The court charged the jury as follows: "I am requested to give you in charge these rules, which I do: 'Where a will is offered for probate, and the evidence submitted by the propounders makes out a prima facie case, the jury, of course, will not refuse it probate merely because some of his heirs are not bequeathed what they expected to get under the will, and because others get as much as they do. A testator with no wife or children has a right to give his property to his living sisters, and to his living nephews and to his living nieces, and the jury would have no right to find against the will merely because the will did not contain legacies for all of the testator's greatnieces.'" To this charge the caveators except on the grounds: (a) that it invaded the province of the jury, in selecting certain facts and instructing the jury as a matter of law that proof of these facts would not authorize the jury to find against the will; (b) that the charge was argumentative, unduly stressed the contentions of propounders, "demolished one of caveators' contentions," and in effect told the jury that the instruction was given at the request of propounders, thus creating in the mind of the jury the impression that the court agreed with their contention; and (c) that this charge selected out of all the facts in the case the fact that the caveators and Miss Leone Walker were left out of the will entirely, and instructed the jury as a matter of law that they could not find against the will merely because these caveators received no legacies. We do not think that the court erred in giving this instruction to the jury, for any of the reasons assigned. It did not invade the province of the jury. In effect the trial judge told the jury that they could not find against the will merely because some of the heirs were not bequeathed what they expected to get under the will, that others got as much as they did, and that the testator did not give legacies to all of his greatnieces. The facts stated in this charge are uncontradicted. This being so, the court instructed the jury that they could not find against the will merely from the existence of such facts. In *Garbutt Lumber Co.* v. *Prescott,* 131 *Ga.* 326 (62 S. E. 228), the question of agency was involved, and the court instructed the jury that certain stated facts were sufficient to establish the agency, when there were other facts in evidence from which a contrary conclusion might be reached. In these circumstances the charge was clearly an invasion of the province of the jury, and required the grant of a new trial.

The judge did not err in stating to the jury that he gave this instruction at the request of counsel for the propounders. This statement at most amounted to a declaration by the judge that he agreed that the contention of law therein presented was sound. It did not instruct the jury that they could not consider the fact that the caveators were left out of the will, in determining the issues of testamentary capacity and of undue influence. In determining these questions, the jury were left to consider all the facts and circumstances of the case. This charge did not ignore the contention of counsel for caveators that this fact could be considered by the jury in determining whether the testator had sufficient mental capacity to make this will, and in determining whether it was executed under undue influence. This instruction was not argumentative.

8. The court charged the jury as follows: "I am also requested to charge you this, which I do: The testimony of W. B. Reeves does not have the effect of an admission binding on the propounders. You consider his testimony along with all the other evidence in the case. You remember Mr. Reeves is one of the propounders, and he was also on the witness stand. Now, the testimony of Mr. Reeves is to be taken like any other witness in the case, just like the testimony of Mrs. Kendrick, or anybody else in the case; but what he says is not an admission that binds Mrs. Kendrick, or any other legatee on the one side or the other. It is admitted for your consideration for whatever it may be worth, not as an admission as binding on anybody, but having that force, weight, and credit to which the jury think it entitled." Caveators except to this charge upon the ground that it is an incorrect statement of the law, in that the admissions of Reeves in his testimony should have been considered as admissions of a party to the record and binding as such; and because it was error to instruct the jury that the testimony of Reeves was admitted for their consideration for what it was worth, not as admissions binding on anybody. W. B. Reeves, one of the propounders, was called to the stand by the caveators, and cross-examined as the opposite party under the Civil Code (1910), § 5879. Caveators contend that under these circumstances his testimony was not to be taken like that of any other witness in the case, but that the jury should have been allowed to consider the circumstances under which he was called, and to take

his testimony in a different way from that of any other witness; and that for this reason it was error for the court to charge that the jury should consider it just like the testimony of Mrs. Kendrick or anybody else in the case. Caveators contend that, even if admissions of this witness, in his testimony, were not to be treated as admissions, it was still not in the province of the court, but in the province of the jury, to say how the testimony should be taken as compared with the testimony of any other witness. Caveators contend that the admissions of Reeves in his testimony should have been considered as admissions of a party in the case and binding as such.

In this instruction the court did not instruct the jury that they must give the same credit to Reeves as they would to any other witness in the case. The court did not undertake to tell the jury what weight the jury should give to his testimony. The court was dealing with the question whether any admissions made by Reeves in his testimony would bind and conclude the propounders; and he instructed the jury that any such admissions made by Reeves in his testimony would not conclude the propounders. He told the jury that his testimony was to be taken like the testimony of the other propounder or any other witness in the case. He then told the jury how this was to be done; and that was, that the jury should give such force, weight, and credit to this witness's testimony as they thought it was entitled to. There can be no doubt of the proposition that any admissions made by one propounder of a will in his testimony would not conclude his co-propounder and the legatees under the will. Nothing to the contrary of this proposition was laid down in *Lucas* v. *Lucas,* 30 *Ga.* 191 (76 Am. D. 642). In that case it was held that "The nominated executor and propounder of a will is a legal party on behalf of the legatees, to conduct the litigation involved in a caveat to the will, from the beginning to a final adjudication." Undoubtedly the nominated executor is a proper party to conduct the proceeding to probate a will. That is the extent of the holding in the case cited. But that case is not authority for the proposition that where two nominated executors propound a will for probate, the testimony or admissions of one of the propounders, when examined by the caveators under section 5879, supra, would be conclusive upon the propounders or the legatees. The court properly instructed the

jury that a propounder, testifying under these circumstances, should be treated as any other witness in the case, and that the jury should give to his testimony just such weight and credit as they thought it would be entitled to. This was not instructing the jury that they should give the same weight to his testimony as to that of other witnesses, or that they should give greater weight to his testimony than to that of other witnesses in the case. So treating this instruction, we do not think the court erred in giving the same to the jury.

9. The court charged the jury as follows: "I am requested to give you this charge: I charge you that a will should be freely and voluntarily executed; but this does not mean that a will should be refused probate merely because a person suggests to another that he make a will, nor even suggests what ought to go into the will; nor merely because such person persuades the maker of the instrument to leave him or some one else a legacy or to make him his executor or coexecutor. Honest intercession, even, does not invalidate a will, even if it causes a man to make alterations in his original will, nor acts of kindness done to him about to make a will." Caveators except to this charge upon the grounds: (a) that it is an incorrect statement of the law; (b) that it invaded the province of the jury in instructing them as to the force, weight, and effect of evidence in the case; (c) that it was argumentative; (d) that it unduly stressed the contentions of the propounders, without any corresponding stress upon the contentions of the caveators. The propositions of law embraced in this instruction are sound. The court charged the jury that a will should be freely and voluntarily executed. This was a correct statement of the law. He then instructed the jury that the will should not be refused probate merely upon any of the grounds mentioned in this instruction. Clearly this part of the instruction was sound law. *Potts* v. *House,* 6 *Ga.* 324 (50 Am. D. 329); *Walker* v. *Hunter,* 17 *Ga.* 364; *Morris* v. *Stokes,* 21 *Ga.* 552; *Jackson* v. *Jackson,* 32 *Ga.* 325.

10. The court charged the jury as follows: "If a paper purporting on its face to be a codicil to an existing will which the testator had previously signed refers to the will in such a way as to unequivocally identify it as the instrument to which the paper in question is intended as a codicil, it will be presumed that the testator at the time of executing the codicil knew the contents of

the original will; and the due execution of the codicil, under such circumstances, will amount to a republication of the will, although the codicil is not actually attached to the will itself." Caveators except to this instruction, upon the grounds: (a) that it is an incorrect statement of the law; (b) that it invaded the province of the jury, in that it instructed them as to the force, weight, and effect of evidence in the case, and as to the presumption to be drawn from the same, when no such presumption was legally authorized by law; (c) that it was an error very prejudicial to caveators for the court to instruct the jury that proof of due execution of a codicil to a will amounted to a republication of the will, and that it would be presumed that the testator, at the time of executing the codicil, knew the contents of the original will, thus completely withdrawing from the consideration of the jury the question of the testator's mental capacity at the time when he executed the original will and at the time when he executed the codicil; and (d) that this charge, given at the end of the charge to the jury, was calculated to confuse and mislead them, and did confuse and mislead them into believing that the proof that the testator executed the codicil as stated was sufficient to show that the testator had the mental capacity to know and understand the contents of his original will, and thus resolved the question of mental capacity in favor of the propounders. This instruction stated a correct principle. *Pope* v. *Pope*, 95 *Ga.* 87 (22 S. E. 245). It is insisted by counsel for the caveators that this instruction should have been followed with a statement that the principle announced would be true, provided the codicil was executed voluntarily by the testator, when he possessed a sound and disposing mind, and the codicil was not itself invalid under some of the principles of law given by the court in its charge to the jury. This was covered by the instruction that the codicil, to have the effect named in the instruction complained of, must be duly executed. Due execution of the codicil implies that it was freely and voluntarily made, that the testator had sufficient mental capacity to execute it, and that the codicil was not invalid for any of the reasons assigned by the caveators. This being so, the charge complained of was not erroneous for any of the reasons assigned.

11. In the tenth ground of the motion the caveators complain that the charge of the court, as a whole, did not present the con-

tentions of the caveators fairly, and that the charge was argumentative and stressed the contentions of the propounders in such a way as to make the jury believe that the propounders should prevail in the case. Caveators insist that this is apparent from the fact, among others, that the court seven times charged the jury to the effect that a man of sufficient mental capacity to make a will had a right to make any disposition that he pleased of his property. This criticism of the charge is without merit.

12. Caveators complain of the following charge to the jury: "Now, in order for the lack of capacity to make a will, or overturn this will, or in order for undue influence to overturn this will, you must be satisfied that the lack of capacity to make a will existed and was in operation at the time the will was made, not three months before or three years before that, or three months after that, or three years afterwards, but the undue influence must exist at the time of the making of the will; in other words, the will when made must have been the result of undue influence." The errors assigned are: (a) that this instruction is not a correct statement of the law; (b) that it was not properly adjusted to the issues made by the pleadings and evidence; (c) that the jury were given to understand that, in order for undue influence to overturn the will, lack of capacity to make a will must have existed and been in operation at the time the will was made, whereas a will may be invalid on account of undue influence; (d) that it was calculated to give the jury to understand that neither lack of capacity nor undue influence alone could invalidate a will, but that both must concur; and (e) that the language, "must be satisfied that the lack of capacity to make a will existed and was in operation at the time the will was made," and "in other words, the will when made, must have been the result of undue influence," was calculated to convey to the mind of the jury the idea that undue influence, in order to invalidate the will, must have been exerted when the will was made. The principle of law laid down in this instruction is the well-settled law in this state. For either lack of mental capacity or of undue influence to invalidate a will, the lack of capacity or the existence of undue influence must exist at the time the instrument is executed; and in case of undue influence, it must operate at the time the paper is executed. While, for the purpose of shedding light upon the state of the testator's mind

when the will was made, evidence of his condition both before and after the execution of the instrument may be shown, the testamentary capacity is to be determined by the condition of the testator's mind at the time when he executes or acknowledges the will. *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423). Undue influence, to invalidate a will, must be operative on the mind of the testator at the very time the will was executed, though, to ascertain whether this was so, the state of things both before and after may be regarded. *Thompson* v. *Davitte,* 59 *Ga.* 472 (2), 476. This instruction is not subject to the criticism that it was calculated to impress the jury with the idea that to invalidate a will both lack of mental capacity to make it and undue influence must have coexisted. While the phraseology of the instruction is not entirely happy, the court in effect instructed the jury that, for lack of capacity or for undue influence to overturn a will, the lack of capacity must have existed at the time the will was made, and that the undue influence must have been in operation at the time of the making of the will. The jury could not have understood from this charge that both must concur to overturn the will, because the court in its charge had fully instructed them that either the lack of mental capacity to make a will or the existence of undue influence in procuring its execution would render the instrument invalid. It follows that the court did not err in giving the instruction complained of in this ground of the motion for new trial.

13. The verdict is supported by the evidence.

*Judgment affirmed. All the Justices concur.*